Vivian Collieries Co. *v.* Cahall—184 Ind. 473.

---

VIVIAN COLLIERIES COMPANY *v.* CAHALL.

[No. 22,486. Filed December 7, 1915. Rehearing denied February 24, 1916.]

1. APPEAL.—*Confession of Error.—Supporting Affidavits.—Supreme Court.—Jurisdiction.*—Where appellee, through appellant's attorney filed a motion to reverse on confession of error, supported by an affidavit that his testimony upon a vital question under the issues was false, and afterwards filed another affidavit asserting that such testimony was true, and that, because of his illiteracy, he did not understand the purport of his first affidavit when signing it, and numerous affidavits supporting both sides of the issue raised on such motion were thereafter filed, the judgment could not be reversed on the ground that the matters set out in appellee's first affidavit were established by a fair preponderance of the evidence, since the Supreme Court was without jurisdiction to consider or determine the matter sought to be presented. p. 480.

2. JUDGMENT.—*Relief from Judgment.—Vacation for Fraud.*—In addition to the relief afforded by §589 Burns 1914, §563 R. S. 1881, authorizing a new trial on the ground of newly discovered evidence, and by §§645, 646 Burns 1914, §§615, 616 R. S. 1881, providing for review of judgment by *nisi prius* courts for material new matter discovered after rendition, a *nisi prius* court of equity may at any time vacate a judgment against a defendant where it is shown that the apparent jurisdiction over the defendant's person was procured by the fraud of plaintiff. p. 481.

3. ATTORNEY AND CLIENT.—*Liens.—Cancellation.*—An equity court of original jurisdiction may on proper showing cancel an attorney's lien. p. 481.

4. APPEAL.—*Supreme Court.—Original Jurisdiction.*—On appeal in an action at law in which the issues were triable by jury, the Supreme Court has no original jurisdiction, since the appeal serves the purposes of a common-law writ of error. p. 481.

5. APPEAL.—*Evidence.—Review.*—The court on appeal cannot weigh the evidence, and what power it has to consider evidence is limited to that given in the court below. p. 481.

6. APPEAL.—*Scope of Review.—Misconduct of Attorneys.—Power of Court.*—Where an appeal had been perfected, briefed on its merits, and the record distributed to the members of the court for consideration, after which the appellee, through appellant's attorney filed a motion to reverse on confession of error supported by his affidavit alleging that he had committed perjury in his testimony as to a vital issue at the suggestion and on the advice of his attorneys, the charge of misconduct thus involved against them, though foreign to any question presented by the appeal, was a matter which the court could consider and pass upon without an independent proceeding, in view of the impropriety of their further appearance in the appeal while charges of such nature remained undetermined. p. 482.

7. APPEAL.—*Bill of Exceptions.—Absolute Verity.*—A bill of exceptions .certified by the trial court, imports absolute verity. p. 483.

8. ATTORNEY AND CLIENT.—*Misconduct.—Evidence.*—The charges of professional misconduct by an attorney incidentally contained in an affidavit supporting a motion filed in the court on appeal, were completely refuted by facts appearing from the bill of exceptions which were inconsistent with the statement made in such affidavit. p. 483.

9. ATTORNEY AND CLIENT. — *Misconduct. — Evidence.* — No just ground is shown to warrant an order for investigating the conduct of an attorney with reference to charges contained in an affidavit of the client asking the court on appeal to reverse the judgment on confession of error on the ground that at the solicitation of the attorney he had committed perjury as to a vital issue, where from the showing made by the attorney it clearly appeared that the client had written a letter stating the facts conformably to his subse-

quent testimony and had made similar statements to a number of persons long before the time of his alleged interview with the attorney. p. 484.

10. MASTER AND SERVANT.—*Injuries to Servant.*—*Complaint.*— *Sufficiency.*—A complaint in a servant's action for personal injuries is not insufficient on demurrer merely upon the ground that certain material facts are not directly averred and that their existence is left to inference. p. 485.

11. MASTER AND SERVANT.—*Employer's Liability Act.*—*Constitutionality.*—The Employer's Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) is not violative of §1 of the 14th amendment to the Federal Constitution nor of §§1, 12 and 13, Art. 1, or §19 Art. 4 of the State Constitution. p. 486.

12. APPEAL.—*Review.*—*Instructions.*—*Stating Allegations of Complaint.*—An instruction purporting to state the material allegations of the complaint was not erroneous as stating facts not pleaded, where the facts so stated were fairly and reasonably inferred from those directly pleaded. p. 486.

13. NEGLIGENCE.—*Instructions.*—*Ordinary Care.*—An instruction that "the law interprets ordinary care to be that degree of care which a person of ordinary prudence under the particular circumstances is presumed to exercise to avoid injury" and that "such care is required to be in proportion to the danger to be avoided, and the fatal consequences that may result from the neglect," expresses the idea that the care required is such as a person of ordinary prudence would exercise, under the particular circumstances, and is not objectionable as declaring that there are degrees of care, but it fixes the standard as ordinary care, and then deals with the quantity thereof necessary, which must vary with the particular facts under consideration. pp. 487, 488.

14. COURTS.—*Stare Decisis.*—*Instructions.*—The doctrine of *stare decisis* will not prevent the reversal of a judgment for the giving of an instruction formerly approved by the Supreme Court, if under the circumstances it was erroneous. p. 488.

15. MASTER AND SERVANT.—*Employer's Liability Act.*—*Contributory Negligence.*—Section 2 of the Employer's Liability Act of 1911 (Acts 1911 p. 145, §8020b Burns 1914), eliminating contributory negligence where the employe's injury results from obedience to an order, makes no distinction between active contributory negligence and that which is passive, and excludes contributory negligence as a defense in case of obedience to any order whether general or special. p. 489.

16. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Error, if any, in an instruction which failed to limit the operation of §2 of the Employer's Liability Act (Acts 1911 p. 165, §8020b Burns 1914), eliminating contributory negligence as defense in case the injury was received by a servant while obeying an order, so as to exclude

the defense in case of a special order only, was harmless where the evidence related only to a special order.  p. 491.

17. APPEAL.—*Review.*—*Instructions.*—*Preponderance of Evidence.*— *Burden of Proof.*—An instruction that preponderance of the evidence means that evidence which is most satisfying to the jury of its truthfulness, however slight it may be, was not defective as inviting the jury to find for the plaintiff on the slightest evidence, since no evidence above a preponderance, even of the slightest weight, is required of the party having the burden of proof.  p. 491.

18. APPEAL.—*Review.*—*Instructions.*—*Preponderance of Evidence.*— *Number of Witnesses.*—An instruction that ''when you are told that plaintiff must prove by a preponderance of all the evidence the material allegations of his complaint, by 'preponderance' is not meant the side upon which the greater number of witnesses appear and testify,'' though awkwardly stated, expresses the correct rule since the ''number of witnesses'' test of preponderance does not obtain in this State.  p. 492.

From Clay Circuit Court; *John M. Rawley*, Judge.

Action by Samuel Cahall against the Vivian Collieries Company.

From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Solon J. Carter*, *McGregor & Harris*, *D. P. Williams* and *Charles J. Orbison*, for appellant.

*Frank S. Roby*, *G. S. Payne* and *Wymond J. Beckett*, for appellee.

MORRIS, C. J.—Action by appellee, mine employe, for personal injuries sustained, as alleged, by appellant's negligence, while obeying an obligatory order of appellant's employe. Acts 1911 p. 145, §8020a Burns 1914. Trial by jury, verdict and judgment for appellee for $5,000.

After this cause was submitted here, briefed by both parties on the merits, and, after the record was distributed for the consideration of the court, a motion, purporting to be by authority of appellee, to reverse the judgment on confession of error, was filed, on October 23, 1914. Subsequently, a great

number of motions and affidavits have been filed by the parties. From the documents filed, on and subsequent to said October 23, it appears that appellee was seriously injured in appellant's coal mine, on May 8, 1911; that about five or six weeks thereafter he employed G. S. Payne, a lawyer of Brazil, to sue appellant for damages for his injuries. Subsequently, Wymond J. Beckett, lawyer, of Indianapolis, was employed, and, by the terms of a written agreement with appellee, they agreed to prosecute the action for a contingent fee equal to fifty per cent of such amount, if any, as might be recovered. These attorneys tried the case for appellee in the court below, while the law firm of McGregor & Harris represented appellant. Judgment was rendered June 22, 1912, and Payne and Beckett filed a statutory notice of intention to hold a lien on the judgment for their agreed attorney fee. §8278 Burns 1914, §5276 R. S. 1881. At the time of the accident appellant carried a liability insurance policy in the London Guarantee and Accident Company, which had offices in Chicago, Illinois, with Edward C. Ryan, as superintendent of its claim department. The insurance company appears to have managed appellant's case in the court below, and also here. The appeal involves a constitutional question, which gives this court juridiction, but it was erroneously taken to the Appellate Court. Because of such error it was subsequently transferred to this court. During the summer of 1913, appellee became angry at his attorney Payne about another matter in litigation, and, without his attorneys' knowledge, sought through Ryan of the insurance company, a compromise of the judgment. Ryan communicated with McGregor & Harris, the insurance company's attorneys at Brazil, and found that Payne and Beckett held a lien on the judgment, and,

because thereof, refused, at that time, to consider appellee's offer. Later, during the summer of 1914, there was correspondence between appellee and Ryan on the subject of settlement, and appellee went to Chicago, and held a conference with Ryan. Later, on September 18, 1914, by previous arrangement, appellee and Ryan met at the law office of McGregor & Harris, at Brazil, where appellee signed an affidavit, reciting among other things, that, while appellee had testified at the trial, that, when injured, he was obeying an order of his superior, in fact, such testimony was false; that he went into the dangerous place of his own volition solely to subserve a personal purpose; that at his first interview with Payne, five or six weeks after the accident, he so informed Payne, who told him he could not recover on such state of facts; that thereupon Payne persuaded him to file a complaint alleging injury while obeying an order of one of appellant's employes, Tom Rosser, a mine boss, and to swear to that effect at the trial; that at the trial appellee was placed on the witness stand, but when it came to testifying about the order given, he was unable to remember the exact language he had been told to use in regard to the alleged order, and that at the following adjournment of court, and before he had concluded his evidence, he met Beckett, who said: "I took you to examine you, and ask you questions so that you could get through and testify to the order that Payne told you to tell; but if you are going to act the damned fool, and not going to tell what we told you to tell, I may as well go back to Indianapolis and let the case go to hell"; that at the reconvening of court appellee's attorneys had him "recalled and went over this matter again with affiant, and induced affiant to swear to the matters which he

did in said trial, and which matters, pertaining to said order, were not true.''

Previous to October 2, 1914, McGregor & Harris, delivered a copy of said affidavit to Judge McBride at Indianapolis. On September 28, 1914, a writing was prepared in the office of McGregor & Harris, and signed by appellee, which recites that appellee has discharged Payne and Beckett, as his attorneys, and requests this court to recognize Robert W. McBride as his sole attorney; it also states that appellee submits his affidavit (the one of September 18, 1914) and other affidavits, and that on the showing thereof, Beckett and Payne, because of their conduct, are entitled to no compensation for past services, and to no consideration at the hands of the court. The instrument is addressed to this court, and requests it to act on such motion as McBride may make. On October 23, 1914, Judge McBride, as representing appellee, filed with the clerk of this court a motion to reverse the judgment on confession of error, and submitted to the discretion of this court, what action herein, if any, should be taken with reference to the alleged misconduct of Beckett and Payne. Attached to the motion was appellee's said affidavit of September 18, 1914, and various other affidavits. On October 30, 1914, the insurance company deposited with McGregor & Harris its check, payable to appellee, with instructions to deliver to him if the judgment in this cause be reversed and the cause dismissed, and release signed. A few days after Judge McBride filed said motion to reverse on confession of error, appellee notified him not to further appear in the case. He also made an affidavit reciting that while he signed said affidavit of September 18, he did not and could not, because of illiteracy, read it; that if the contents thereof were read to him, he did not under-

stand the same; that there was no basis in truth for
the statements therein made in relation to Payne
and Beckett; that when injured he was working in
obedience to the order of Rosser, and not otherwise;
that his evidence given at the trial was true; that
in signing the paper purporting to authorize Judge
McBride to appear for him here, he did not under-
stand the nature or contents thereof. On becom-
ing acquainted with the contents of this affidavit,
Judge McBride, on November 4, 1914, withdrew as
appellee's counsel here, but, by written petition,
asked to be permitted to appear as *amicus curiae*, in
relation to the charges against Payne and Beckett,
to the end that if, on consideration by this court, the
charges shall be found true, appropriate action
should be taken; while if not found true the attorneys
should be vindicated. Subsequently, appellee moved
to strike from the files the motion filed by Judge Mc-
Bride on October 23. Appellee, and Payne and
Beckett, also filed separate motions to dismiss the
appeal because of what is termed a fraudulent con-
spiracy. Thereupon appellant employed D. P.
Williams and Charles J. Orbison, attorneys, to ap-
pear for it, and it has filed numerous affidavits in re-
lation to the truth of the matters contained in ap-
pellee's affidavit of September 18, 1914, and in op-
position to appellee's motions. Affidavits contain-
ing hundreds of pages of typewritten matter have
been filed by appellant and appellee to support, or
oppose, the several motions. We deem it unneces-
sary to set out even their substance.

Messrs. Orbison and Williams, for appellant, have
filed an elaborate brief in which they take the posi-
tion that the truth of the matters stated in
appellee's affidavit of September 18, 1914,
has been established by a fair preponderance
of the evidence, contained in the several affidavits

filed, notwithstanding appellee's subsequent repudiation thereof; that in such case this court has the power, and should exercise it, to reverse the judgment because of such facts, shown here for the first time. We are of the opinion that this court is without any jurisdiction to consider, or determine, the matter sought to be presented. Whether, when injured, appellee was acting in obedience to an order of appellant's employe, was of vital importance under the issues. In the court below, evidence, *pro* and *con*, was introduced in relation thereto. If, at the trial, appellee testified falsely, that fact, at the time, was a legitimate subject of inquiry. Section 589 Burns 1914, §563 R. S. 1881, provides for the trial court granting a new trial, within one year after judgment, for newly-discovered causes therefor. Sections 645, 646 Burns 1914, §§615, 616 R. S. 1881, authorize the filing, in a *nisi prius* court, within three years after rendition of judgment, of a complaint to review the same for material new matter discovered since the rendition thereof. A *nisi prius* court of equity may, at any time, vacate a judgment against a defendant where it is shown that the apparent jurisdiction over the defendant's person was procured by the fraud of the plaintiff. *Miedreich* v. *Lauenstein* (1909), 172 Ind. 140, 86 N. E. 963, 87 N. E. 1029. An equity court of original jurisdiction may, on proper showing, cancel an attorney's or other lien. This action is one at law, and the issues were triable by jury. On the appeal of such cases, this court has no original jurisdiction. The appeal serves the purpose of a common-law writ of error, and none other. Whether the appellee was working under the order of a superior was a fact triable, and tried, by a jury,

and, on appeal, power is withheld from this court to
weigh the evidence for or against such fact. Whether
the matter here be newly-discovered evidence, or ma-
terial new matter, if appellant be entitled to relief
because thereof, such relief must first be sought in a
court of original jurisdiction, and not in one with
mere power to review a proceeding for alleged error
of law. Whatever power this court has to consider
evidence is limited to that given in the court below.
*Burdick* v. *Hunt* (1873), 43 Ind. 381; *RedMountain
R. Co.* v. *Blue* (1907), 9 Ann. Cas. 951, note.

Is this court warranted, in this appeal, in consider-
ing the charges against attorneys Beckett and
Payne? While they are not shunning a con-
6.   sideration of the question, it would be im-
proper for the court to determine the mat-
ter in this opinion, if it is without jurisdiction of the
particular subject-matter. If the charges were
deemed sufficient to establish a *prima facie* case of
misconduct authorizing a proceeding for disbar-
ment, no doubt this court possesses the power to
order a proper investigation, but such proceeding
would be apart from anything directly involved in
this appeal. However, Beckett and Payne pre-
pared the original brief for appellee here, and have
also filed a brief in the subsequent proceedings.
They are officers of this court, and it is their duty to
render it legitimate assistance, in the determination
of this appeal. Their duties here do not end until a
final disposition of the appeal. Nevertheless, if
sufficient cause were shown for the institution of dis-
barment proceedings, there would be manifest im-
propriety in their further appearance in this appeal
while charges of such nature might be pending. This
court has heretofore seen fit to strike from the files
an appellant's briefs in a pending appeal because
containing improper matter. *Pittsburgh, etc., R. Co.*

v. *Muncie, etc., Traction Co.* (1906), 166 Ind. 466, 77 N. E. 941. We are of the opinion that the court has the power, in this appeal, to consider the matter presented.

Mr. Beckett seeks to meet the charge against him by a verified denial and by an appeal to the record filed by counsel for appellant. A stenographic report of the evidence and proceedings at the trial appears in the bill of exceptions filed by appellant. This bill, certified by the trial court, imports absolute verity. Not even an agreement of parties as to facts contradicting statements in a bill of exceptions can be considered as true. Ewbank's Manual §34; *Davis* v. *Union Trust Co.* (1898), 150 Ind. 46, 49 N. E. 817. An examination of the bill of exceptions discloses that appellee was examined by Beckett; that on such examination he testified that Tom Rosser, appellant's mine boss, ordered him to go to the place of injury, to get out water, using in such order the following language: "You want to get in there and get damn busy and get that water out of there"; that he thereupon obeyed the order, and went to the place designated, where he was injured. He was then cross-examined by Judge McGregor, attorney for appellant. After this there was an adjournment of court for the day. The next day there was a reëxamination of appellee, in chief, as to his physical condition, but nothing whatever in regard to the order. At no time subsequent to that adjournment was he asked any question by any one in relation to that subject, nor did he volunteer any statement with reference thereto. He never testified but once, on direct examination, about the matter in dispute, and during such examination there was no adjournment of court. We have heretofore, set out in the exact language of the affidavit, the charge against

Beckett. Considering the bill of exceptions, the possibility of the truth of the charge is completely refuted and we deem further notice of it unnecessary.

The gravamen of the charge against Payne has been heretofore noted. He seeks to meet it with (1) his verified denial, (2) the verified repudiation of the charge, by appellee, (3) a letter to him by Cahall, in handwriting of his wife, dated May 22, 1911, and (4) affidavits of various persons. Previous to appellee's injury Payne had represented him in a land case. In Payne's affidavit he says that the first information he had of appellee's injury was in a letter received from Cahall, on May 22, 1911, two weeks after the injury, and reading as follows:

"May 22, 19---. I rote you and hadent hear from you I got Smashed in the mine a rock fell on my hips and I cant walk any I was Pumpen the doctor said it was hard to tell when I would be able to work I am bed fast and I wanted to kno what you was doing a bout that land. I have got a good case I was sent where I got hurt if they don't come through I will have you to see after it. Samuel Cahall."

He further says that subsequently he visited Cahall, at the latter's home, and appellee, in response to questions about the accident, said that Tom Rosser sent him into the room, where he was injured, to get the water out; that he believed the statement of appellee to be true, and, relying thereon, agreed to prosecute the action; that at no time did he tell Cahall what he should testify. Of five affiants, whose reputation for truth is unquestioned, each swears that, soon after the accident, he or she visited appellee at his home, while he was confined in bed as a result of his injuries, and that to each, appellee said

that Tom Rosser, the mine boss, ordered him to go into the room where he was injured. These conversations occurred before it is claimed that Payne saw Cahall, after the injury. It will be noticed that it is charged that five or six weeks after the accident (which occurred May 8, 1911), Cahall met Payne for the first time after the injury, and then told him that he did not go into the room in obedience to any order, and thereupon Payne persuaded him to commit the alleged perjury. The truth of such statement, in view of the letter of appellee dated May 22, and written at least three weeks before the supposed interview, and while Cahall was yet confined to his home, and, in view of the statements made by appellee to said five affiants immediately after the injury, is so obviously improbable as to fairly preclude further consideration of the matter regardless of Payne's denial and Cahall's repudiation of his first affidavit. No just ground is shown to warrant an order for an investigation of Payne's conduct.

With these preliminary questions determined, we proceed to an examination of the appeal on its merits.

10. Many objections are urged against the sufficiency of the complaint, and they are based, in substance, on the ground that certain material facts are not directly averred, and that their existence can only be determined by resort to inference. While appellant's counsel were preparing their briefs for this appeal, this court delivered the opinion in the case of *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99, and thereafter they added to the points and authorities in their brief a copy of those found in appellant's brief on petition for rehearing in the De-Armey case. Substantially the same principles are here involved that were determined in the opinions, .

original and on petition for rehearing, in that case, and that determination was adverse to appellant's contentions here. We adhere to the rule declared in the DeArmey opinions, and deem it unnecessary to set out here a copy of the complaint in this case, or discuss appellant's objections thereto, but content ourselves with holding that the complaint is sufficient to repel appellant's demurrer.

On March 2, 1911, the General Assembly passed what is known as the Employer's Liability Act. Acts 1911 p. 145, §8020a Burns 1914. In the trial of the cause, the court made certain rulings that are challenged on the theory that the act is invalid, and appellant claims that such invalidity exists because the act violates §1 of the 14th amendment to the Federal Constitution, §19, Art. 4, and §§1, 12, 23, Art. 1, of the Constitution of Indiana. The act was considered in *Vandalia R. Co.* v. *Stillwell* (1914), 181 Ind. 267, 104 N. E. 289, and there held not violative of the 14th amendment, nor of either §§12 or 23, Art. 1, of our State Constitution. Appellant has suggested no sufficient reason for holding the act in conflict with either §1, Art. 1, or §19, Art. 4 of the Indiana Constitution. We, therefore, hold the act valid as against any constitutional objection urged.

Instruction No. 1, requested by appellee, and given, purports to state the material allegations of the complaint. It is criticized for stating facts not pleaded, and particularly because it informed the jury that the complaint alleged that a piece of slate, the falling of which injured plaintiff, fell because it was loose. Were resort to inference excluded, there might be just ground of complaint, but, in construing pleadings, facts are deemed as stated that can be implied, by fair and reasonable inference, from those actually stated.

*Domestic Block Coal Co.* v. *DeArmey, supra,* and authorities cited. Considered in the light of such rule, there was no error in giving the instruction.

Appellee's requested instruction No. 4 was given and reads as follows: "The law interprets ordinary care to be that degree of care which a person 13. of ordinary prudence under the particular circumstances, is presumed to exercise to avoid injury. Such care is required to be in proportion to the danger to be avoided, and the fatal consequences that may result from the neglect." Counsel for appellant contend that there is error in the instruction, because it defines ordinary care to be such as a person of ordinary prudence is "presumed to exercise," instead of stating that it is such as a person of ordinary prudence "would *exercise.*" It is also further criticized because it is said to invade the province of the jury by declaring that there are degrees of care, and that a greater degree is required in some instances than in others, whereas, in all cases, only the exercise of ordinary care is required by the law. The instruction is copied from a definition formulated by this court in *Toledo, etc., R. Co.* v. *Goddard* (1865), 25 Ind. 185, 197, in an opinion by Jehu T. Elliott, J. The definition was approved in *Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638, 46 N. E. 344, and again in *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663, 53 N. E. 641; *Shirley Hill Coal Co.* v. *Moore* (1914), 181 Ind. 513, 518, 103 N. E. 802. The same definition was used by the trial court in *Indianapolis St. R. Co.* v. *Seerley* (1905), 35 Ind. App. 467, 72 N. E. 169, 1034, and was approved by the Appellate Court, on appeal, and by this court on petition to transfer. In a learned and elaborate argument, appellant's counsel discuss their objections to this instruction, and quote from the opinion of Woods, J., in *Gar-*

*field* v. *State* (1881), 74 Ind. 60,. 63, as follows: "It is not every statement of the law found in a text-book or opinion of a judge, however well and accurately put, which can be properly embodied in an instruction. The processes of reasoning by which a conclusion is reached, if well made, are appropriate to be found either in text or opinion, but rarely, if ever, is it proper to deliver such reasoning to a jury in the form of instructions." It is claimed the instruction here falls within the class criticized in Judge Woods' opinion. No objection can be urged against the doctrine declared by Judge Woods, but we are of the opinion that it is not fairly applicable to this instruction. The portion of the opinion in *Toledo, etc., R. Co.* v. *Goddard, supra,* copied in this instruction, was not a process of reasoning toward a conclusion, but was itself the conclusion of the court, and, by it, intended as a definition of ordinary care. However, if the definition is erroneous, and if such error was calculated to prejudice appellant's defense, this court should not refuse relief, for the doctrine of *stare decisis* would have no just application in a case of this character, under such circumstances. We perceive nothing serious in the first objection. Manifestly the court by the instruction intended to express the idea that the care required is such as a person of ordinary prudence would exercise under the particular circumstances, and we are of the opinion that it must have been so understood by the jury, for no other meaning would be reasonably inferable from the language used.

We are of the opinion that the second objection urged against the instruction is untenable. It is true, of course, that only ordinary care was exacted of appellant, and, it may be conceded, as appellant contends, that it is inaccurate to say that the de-

gree of care varies with the particular circumstances, for only reasonable or ordinary care is required in any case of the character here under consideration. Appellant's counsel, in their brief, discuss various definitions of ordinary care, and the authorities cited disclose the difficulty of formulating a satisfactory definition for a relative term. *Effinger* v. *Fort Wayne, etc., Traction Co.* (1911), 175 Ind. 175, 179, 93 N. E. 855, 33 L. R. A. (N. S.) 123; 29 Cyc 428; 5 Words and Phrases 4755. That a more satisfactory one might now be found than that under consideration may be conceded, but we are of the opinion that it was not calculated to mislead the jury into understanding that any higher degree, or standard, of care, than ordinary, was required. Counsel say that while the amount of care required varies with the particular circumstances, the standard must remain the same. This must be conceded, and, as we understand the instruction, it is not in conflict with the above proposition; on the other hand it fixes the standard as ordinary care, and then deals with the quantity thereof necessary, which, appellant concedes, varies with the particular facts under consideration. There was no reversible error in giving the instruction. Instruction No. 5, given at appellee's request, is criticized, but we are of the opinion that it contains nothing harmful.

It is claimed that instructions Nos. 6, 7, 8 and 10 are erroneous because they relieved appellee of responsibility for affirmative acts of negligence causing his injury. The complaint alleges that appellee's injury was caused in obeying an order of appellant's employe which appellee was obliged to obey. §2 Acts 1911 p. 145, §8020b Burns 1914. It seems to be appellant's theory that while the statute, under the circumstances enumerated, excludes contributory negligence as a de-

fense, nevertheless a proper construction of the act limits such exclusion to "passive" contributory negligence, and that where the plaintiff is guilty of some affirmative act that helps to produce the injury, such fact furnishes a complete defense to the action. Whether the common law recognizes a distinction between active and passive negligence is not necessary to decide. *Pennsylvania Co.* v. *Sinclair* (1878), 62 Ind. 301, 306, 30 Am. Rep. 185; 29 Cyc 421. If it does, this statute fails to limit the exclusion to contributory negligence of a passive character. In their discussion of the proposition, appellant's counsel suppose a loose overhanging rock, with its dangers known to both master and servant, and the servant, in passing under it, pursuant to the master's order, is injured by the fall of the stone. They say that in such case the act of 1911, *supra*, excludes the defense of contributory negligence, but if, in passing under the loose stone, the servant voluntarily knocks it down with a sledge hammer, and receives an injury from the falling stone, then the servant's contributory negligence is affirmative and constitutes a defense. It is sufficient to say that in such case the servant's act, and not the master's negligence, would be the sole proximate cause of the injury. The instructions were not erroneous because of the objections urged.

Appellant contends that appellee's requested instructions Nos. 8, 9 and 10 are erroneous because in each, the jury was informed that contributory negligence was not a defense if appellee's injury was sustained as a result of obedience to the order of an employe which he was obliged to obey. It is claimed that the instruction would permit recovery in case of a general, as well as a specific, order. In construing the act of 1893 (subd. 4 §8017 Burns 1914, Acts 1893 p. 294) it was held that the order con-

templated by that statute was a specific, and not a general, one. *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25, 80 N. E. 841, 81 N. E. 721. It will be noticed however that there is a difference between the language of the statutes. In the act of 1911, the defense of contributory negligence is excluded where the injury results from the obedience of "any" order. The use of the word "any" is significant of the legislative intent, especially in view of the construction of the act of 1893, *supra,* and we are of the opinion that there was no error in the failure to limit the obedience to a special, as distinguished from a general, order. Moreover, if there was error, it was harmless, for the only evidence given in regard to any order related to a special one.

Instruction No. 11, reads as follows: "When you are told that the plaintiff must prove by a preponderance of all the evidence, the material allegations of his complaint by 'preponderance' is not meant the side upon which the greater number of witnesses appear and testify. By preponderance is meant the greater weight of evidence and that evidence which is most satisfying to you of its truthfulness however slight it may be, is what is meant by 'preponderance.' " In relation to this instruction appellant's point (number 16) is as follows: "Plaintiff's instruction number eleven is erroneous because it invades the province of the jury— (a) In telling them that by preponderance is not meant the side upon which the greater number of witnesses testify, instead of telling the jury it does not necessarily mean that all other things being equal the preponderance is on the side having the greater number of witnesses testifying to a fact. (b) In telling the jury that 'that evidence which is most satisfying to you of its truthfulness, however slight

it may be, is what is meant by preponderance.'
Besides invading the province of the jury, this part
of the instruction is a bid to the jury to find for plain-
tiff on the slightest evidence which a jury is prone
enough to do where a corporation is defendant with-
out being given an extra prod by the court." *El-
well* v. *Hacker* (1894), 86 Me. 416, 30 Atl. 64, is
cited in support of proposition b. We are of the
opinion that the latter point (16b) is without merit.
The law requires of the party with the burden of the
issue that he have simply a preponderance of the
evidence, and nothing more of the slightest weight,
is required. *Hammond, etc., Electric R. Co.* v.
*Antonia* (1908), 41 Ind. App. 335, 343, 83 N. E.
768. As to the other proposition (16-a) counsel for
appellant say: "If everything connected with
the witnesses' testimony was exactly equal,
the preponderance would necessarily be upon
the side of the greater number." This point pre-
sents for consideration the "number of witnesses"
test. In the development of the common law there
was a time when great importance attached to an
oath, *per se*. "All through the Saxon and Norman
times, the oath is a verbal formula, which, if suc-
cessfully performed without immediate disaster, is
conceded to be efficacious *per se*, and irrespective of
personal credit. * * * This numerical concep-
tion is inherent in the general formalism of it." 3
Wigmore, Evidence §2032. See Thayer, Evidence
17-34. It would appear that, in those times, it was
commonly believed that God would immediately in-
tervene and punish the perjurer, and consequently it
was reasoned that the contender supported by the
greater number of unpunished witnesses should pre-
vail. *The Queen* v. *Muscot* (1795), 10 Mod. *192.
With the passing of the belief in immediate punish-
ment for the oath violator, the probative weight of

number of witnesses, *per se*, was left without substantial basis. Chamberlayne, in his treatise, 2 Chamberlayne, Mod. Law of Ev. §991, says: "No numerical, or other physical test for truth obtains, as a rule, in the English law of evidence. Few propositions are presented for judicial determination which may not be satisfactorily established by the evidence of a single witness." This rule has some exceptions embodied in the written law. See §§2120, 2123 Burns 1914, Acts 1905 p. 584; *Hay* v. *State* (1912), 178 Ind. 478, 98 N. E. 712, Ann. Cas. 1915 C 135. In *Indianapolis St. R. Co.* v. *Johnson* (1904), 163 Ind. 518, 72 N. E. 571, this court held the following instruction not erroneous: "The preponderance of evidence does not depend upon the number of witnesses, and does not mean the greater number of witnesses. It does depend upon the weight of the evidence, and means the greater weight of the evidence." In the course of the opinion, delivered by Jordan, J., it was said: "The authorities generally affirm that the witnesses are not to be counted by the jury * * * and the preponderance thereof does not depend on the greater number of witnesses in the particular case." In *Warren Construction Co.* v. *Powell* (1909), 173 Ind. 207, 214, 89 N. E. 859, this court held, because of an improper test, the following instruction erroneous: "And all other things being exactly equal in all respects, the witnesses being of equal intelligence and credibility, and possessing equal opportunities of knowledge of the matters about which they testified, and testifying with equal candor, intelligence and fairness, the weight of the evidence as to any matter may be considered by you to be on the side which has the greater number of witnesses in its favor thereon." A like instruction was condemned in *Indianapolis Abattoir Co.* v. *Neidlinger* (1910), 174

Ind. 400, 410, 411, 92 N. E. 169.   To the same effect see *Indianapolis, etc., R. Co.* v. *Bennett* (1906), 39 Ind. App. 141, 79 N. E. 389; *Thurman* v. *Miller* (1912), 50 Ind. App. 372, 98 N. E. 379; *Cincinnati, etc., R. Co.* v. *McCollum* (1911), 47 Ind. App. 184, 93 N. E. 1033.   Whatever may be the rule in other jurisdictions it must be conceded that in Indiana, in recent years, the numerical test has been repudiated. While this instruction is awkwardly drawn, and is not commended as a model, we do not consider it erroneous under the evidence here, as against the objections urged.   The record presents no reversible error.   Judgment affirmed.

NOTE.—Reported in 110 N. E. 672.   As to validity of Employer's Liability Act exempting certain employments from its operation, see Ann. Cas. 1914 D 404.   As to contributory negligence of employe in obeying direct command, see 30 L. R. A. (N. S.) 441.   For a discussion of the preponderance of evidence as determined by mere number of witnesses, see Ann. Cas. 1913 D 676.   As to statutes affecting the defense of contributory negligence in actions by servants against masters, see 5 Ann. Cas. 633.   See, also, under (1) 4 C. J. 1161; (2) 23 Cyc 982, 983, 1025; (4, 5) 4 C. J. 843; 3 Cyc 345; (7) 4 C. J. 515; 3 Cyc 152; (10) 26 Cyc 1384, 1386; (11) 26 Cyc 978; (12) 38 Cyc 1614; (13) 29 Cyc 650; (14) 11 Cyc 749; (15) 26 Cyc 1229; (16) 4 C. J. 1027; 38 Cyc 1640; (17) 38 Cyc 1750.