Richard A. BRATTON, Appellant–Defendant

v.

MGK, INC., d/b/a Women's Pavilion, Appellee–Plaintiff.

No. 71A03–91–07–CV–202.

Court of Appeals of Indiana, Third District.

Feb. 26, 1992.

W. Russell Sanford, Plodowski & Sanford, South Bend, for appellant-defendant.

Angella Castille–Ahrens, Cynthia S. Gillard, Warrick, Weaver & Boyn, Elkhart, for appellee-plaintiff.

GARRARD, Judge.

On October 28, 1988 MGK, Inc., d/b/a Women's Pavilion (MGK) filed a complaint in the St. Joseph Superior Court, Mishawaka Division, against James H. Powers (Powers), John Doe Nos. 1 through 100 and Jane Smith Nos. 1 through 100. MGK requested that the defendants, a group of persons unknown to MGK, be restrained and enjoined from various activities associated with their anti-abortion demonstrations outside the pavilion. The trial court issued a temporary restraining order (TRO). On November 3, 1988 a hearing was held. The defendants failed to appear and the TRO was continued in full force as a preliminary injunction. Powers had been personally served with notice and the John Doe and Jane Smith defendants were served with notice of these actions by publication. On February 2, 1989 MGK moved for entry of default judgment. On February 3, 1989 the injunction was made permanent.

MGK had been the subject of various forms of protests and demonstrations since its establishment. From February 1988 to October 1988 the demonstrators kept to the public right of way on the street, with only occasional excursions onto clinic property.

In October of 1988 a man, later identified as Richard A. Bratton (Bratton), gained entry into the pavilion by requesting information, ostensibly for a daughter who was possibly pregnant. By his own account, there was a verbal altercation with the administrator of MGK. Bratton, who identified himself only as "John Doe 2805," spoke to the employees of MGK about his views on abortion. This disrupted the clinic's work. Bratton left only after being requested to do so three times. Bratton was arrested as a result of this incident. The police recommended the MGK obtain a restraining order. They did and this action was set in motion.

MGK filed a motion to show cause against Bratton and others on August 6, 1990 as a result of the events of January 19, 1990. Demonstrators on that day formed barricades at the entrances to the pavilion and would not allow the employees

to enter. An alias rule to show cause was issued on September 12, 1990 and served upon Bratton on September 13, 1990. On November 21, 1990 the trial court granted MGK leave, without objection, to amend the complaint by adding Bratton as a named party. On December 12, 1990 a hearing was held. The trial court found that MGK had proven by clear and convincing evidence that Bratton had actual notice of the injunction and was aware that it existed before January 19, 1990. The trial court's order stated:

> Defendant [Bratton] is found in contempt of the order of this Court and he is ordered to pay to the Clerk of the Court for the use of the plaintiff as damages and as attorney's fees the sum of $6,000. He is further ordered committed to the custody of the Sheriff of St. Joseph County for confinement in the County jail for a period of 60 days or until that sum is paid. Bond fixed in the amount of $6,000, corporate surety only.

Bratton's January 10, 1991 motion to correct error was denied.

*Discussion*

I. Bratton's appeal denominates multiple arguments that we consolidate as follows:

> May Bratton, as a non-named party to a permanent injunction, who was not formally served with summons or other personal notice of the injunction, be held in contempt for violating the terms of that injunction when it was shown by clear and convincing evidence that he had actual knowledge of the injunction and its terms prior to the date (January 19, 1990) he was alleged to have violated the injunction?

■ Bratton contends that he cannot be bound by the terms of the injunction because he was not served individually pursuant to Indiana Rules of Procedure, Trial Rule 4.1. He argues that the only service made upon him pursuant to TR 4.1 was his receipt of the rule to show cause filed after the January 19, 1990 incident and there-

fore, it was a violation of due process to subject him to the instant contempt proceeding. We do not agree.[1]

■ There has been extensive treatment of this issue by the federal courts. *See* 11 Wright and Miller, Federal Practice and Procedure, § 2956. *See also Violation– Court Order–Contempt–Nonparty,* 7 A.L.R. 4th 893 (reviewing various state court decisions ruling on the issue). There exists little Indiana case law on the subject. However, an exception to the general rule that "notice of an injunction ... must be served on the person ... enjoined or restrained by the order," has been recognized and applied. *Bottoms v. B & M Coal Corp.* (1980), Ind.App., 405 N.E.2d 82, 89. If a person is shown to have actual knowledge of the injunction, he may be liable if he violates its provision(s). *Bottoms,* 405 N.E.2d at 89. Bratton's procedural due process argument does not take into account the text of TR 65(D) which binds those persons that participate with the parties enjoined if they have "receive[d] actual notice of the order by personal service or otherwise." The rule's text sets out more than one way for a person to be bound by a lawful injunction. *See* Wright and Miller, *supra.*

■ An elementary and fundamental requirement of due process is notice reasonably calculated to apprise interested parties and afford them opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865. In determining whether constitutional requirements have been met, the court should take cognizance of the practicalities and peculiarities of the particular case.

■ Bratton, as a non-named party, was in contempt of the permanent injunction only if MGK, the moving party, demonstrated by clear and convincing evidence that: (1) Bratton had actual notice of the injunction, (2) the order met the specificity

---

**1.** Bratton does not take issue with the validity or scope of the injunction. We confine our review to the issue as set out above.

requirements of the rules of procedure, and (3) Bratton thereafter violated the order by participating in the enjoined activity. *Cf. Graves v. Kemsco Group, Inc.* (N.D.Ind. 1987), 676 F.Supp. 1411, 1416. Testimony received by the trial court established that (1) MGK routinely read and gave copies of the injunction to demonstrators, (2) Bratton was a regular protestor at the pavilion, (3) a South Bend police office working as a security guard at the pavilion told Bratton of the injunction, read it to him and gave him a copy of it shortly after it was issued in February of 1989, (4) MGK's administrator testified that she gave Bratton copies of the injunction many times, (5) on January 19, 1990 demonstrators formed barricades at the entrances to the pavilion refusing to let MGK's administrator enter the building, (6) Bratton was among the demonstrators that morning, and (7) Bratton, speaking for the group, said they could not leave. Events 5, 6 and 7 were recorded by a local news photographer and the videotape was played as evidence to the court. Our review of the injunction demonstrates that it fully complies with the procedural requisites of TR 56(D) in form and scope.

Once satisfied that the above requirements were met, we leave to the sound discretion of the trial court the determination of whether to hold Bratton in contempt. We may not reweigh the evidence or judge the credibility of the witnesses and will reverse only if the trial court's decision is clearly against the logic and circumstances of the case. *Stream Poll. Cont. v. Tippecanoe S. Land.* (1987), Ind. App., 511 N.E.2d 473, 475.

By issuing a permanent injunction the trial court had effectively adjudicated the rights of MGK with respect to those of the demonstrators. Under the circumstances of this case, if Bratton's contentions were heeded, unnamed parties such as Bratton might easily thwart the judicial process.

His contention that original process is the sole method with which to acquire jurisdiction over him, under the circumstances of this case, would require MGK to seek additional adjudications each time a new demonstrator engaged in illegal conduct. Moreover, by continually changing the persons appearing, any groups bound on violating the rights of others might effectively defeat the power of the courts to render redress. That is not the stuff of due process.

■ Bratton's procedural due process right, to be afforded the opportunity to respond, was adequately protected in this case. He was given actual notice of the injunction when it was read to him shortly after MGK received it on February 3, 1989. The burden placed on MGK to demonstrate by clear and convincing evidence that Bratton had actual knowledge of the injunction further protects his procedural due process rights.[2] He had, from the time he was put on notice of the existence of the injunction, every right to lawfully challenge the injunction prior to January 19, 1990 when he was found to have violated its terms. When Bratton, a non-named party who had actual notice of the existence and the terms of the injunction, chose not to contest the injunction through the orderly processes of law but rather participated in the enjoined activity, he did so at his peril. No abuse of discretion by the trial court is found.

Affirmed.[3]

HOFFMAN, P.J., and CONOVER, J., concur.

2. If the movant is unable to demonstrate by clear and convincing evidence actual notice to the contemnor, due process would require the trial court to dismiss the action against him. This is precisely what occurred against Ralph Johnson, a co-defendant of Bratton. The evidence showed only that he "must have known" or "may have read it to a group he was in."

Record at 350. We agree with the trial court that these "simply don't cut it when the standard of proof is by clear and convincing evidence." *Id.*

3. Bratton also invites us to examine what he suggests is a discrepancy between the permanent injunction in the record, a three page doc-

ument, and the official permanent injunction. This court is not the proper forum for the consideration of new or additional evidence not considered below. This Bratton explicitly acknowledges. *See Vivian Collieries Co. v. Cahall* (1915), 184 Ind. 473, 481–82, 110 N.E. 672.