**REED SIGN SERVICE, INC.,**
**Appellant–Defendant,**

v.

**LYNN REID, Appellee–Plaintiff.**

No. 34A02–0103–CV–132.

Court of Appeals of Indiana.

Sept. 26, 2001.

Dan J. May, Kokomo, IN, Attorney for Appellant.

Mark A. Scott, King, McCann & Scott, LLP, Kokomo, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Reed Sign Service appeals from an order finding it in contempt and ordering it to reimburse Lynn Reid in the amount of $7500.00. We affirm.[1]

### Issues

Reed Sign raises at least nine issues for our review, which we consolidate and restate as three:

1) whether the trial court erred in denying Reed Sign's motion to dismiss for lack of personal jurisdiction,

2) whether the trial court abused its discretion in finding Reed Sign in contempt, ordering it to dismantle a sign erected in violation of a restraining order, and ordering it to pay $7500.00 to Lynn Reid, and

3) whether Reed Sign should be awarded appellate attorney fees.

Additionally, we consider Lynn Reid's request for appellate attorney fees.

### Facts and Procedural History

The facts most favorable to the judgment reveal that Lynn Reid is the owner of a Honda motorcycle dealership located at U.S. 31 and State Road 26 in Kokomo, Indiana. Reed Sign is the owner of a billboard that occupied leased space on Lynn Reid's property. The owner of a billboard on that particular stretch of highway must possess both a state and a county permit for the sign. In addition, both state and local regulations provide that no two billboards may be erected within less than five hundred feet of one another along the highway. This dispute arose over whether Lynn Reid or Reed Sign would be able to place their advertising along this stretch of highway.

Lynn Reid purchased his current property subject to Reed Sign's lease of the space for their billboard. He did not wish to renew that lease when it neared expiration because he wanted to place his own billboard in that same spot. Thus began a contest between Lynn Reid and Reed Sign to acquire the appropriate permits for erection of a billboard within the 500 foot stretch along the highway. Lynn Reid acquired a county permit to erect his own sign; then the Howard County Plan Commission revoked his permit and issued one to Reed Sign, which had arranged to simply move its existing sign onto the property of a neighboring gas station. While Lynn Reid began an administrative action with the Howard County Plan Commission over what he believed to be the erroneous revocation of his construction permit, Reed Sign acquired a renewal permit from the State.

1. Reed Sign's request for oral argument is hereby denied.

Lynn Reid then learned of Reed Sign's imminent plans to move the sign to the neighboring property. As this new sign location was still within 500 feet of the location for his own sign, Lynn Reid would be prevented from ever erecting his own sign on his property. Thus, Lynn Reid sought a temporary restraining order (TRO) from the Howard County Superior Court to prevent Reed Sign from moving their existing sign to the new location while he participated in administrative proceedings regarding the revocation of his own construction permit.

On Friday, February 25, 2000, Lynn Reid was granted a ten-day TRO ex parte. The matter was set for immediate hearing on Monday, February 28, 2000, so that Reed Sign might have an opportunity to be heard. At the hearing on February 28, Lynn Reid appeared and was represented by counsel. Reed Sign, also represented by counsel, filed a Motion to Dismiss for lack of personal jurisdiction and a request for change of judge. The trial court granted the request for change of judge, denied the motion to dismiss, and ordered that the TRO would remain in effect.

During the hearing, workers at the Reed Sign construction site remained in their vehicles and did no work. However, immediately after the hearing, those workers exited their vehicles and completed work on the moving of Reed Sign's billboard from Lynn Reid's property to the new location on the neighboring property. Lynn Reid then filed a petition for contempt against Reed Sign on March 3, 2000.

Then ensued a series of hearings and two more motions to dismiss filed by Reed Sign.[2] At the final hearing on October 31,

2000, all matters were argued before the trial court. The trial court issued findings and conclusions in an order dated February 2, 2001. The trial court denied the renewed motions to dismiss and ordered Reed Sign to dismantle its sign on the gas station property and to reimburse Lynn Reid $7500.00 for attorney fees. This appeal followed.

*Discussion and Decision*

I. Preliminary Issue: Actual Notice

■ Before turning to the issues of jurisdiction and contempt, we consider whether the trial court's finding that Reed Sign had actual notice was adequately supported by evidence, as resolution of this issue is crucial to the other two issues. Reed Sign's argument on this issue is far from clear, and it does not ever explicitly state that it did not have actual notice. When discussing the jurisdictional aspect of the case, Reed Sign argues that "[A]ctual notice is insufficient if no service of summons is attempted." Br. of Appellant at 21. Conversely, it later argues the trial court's finding that it had actual notice is not supported by evidence. Br. of Appellant at 30.

■ The standard of review for findings of fact and conclusions thereon issued pursuant to Indiana Trial Rule 52(A) is one of great deference. In reviewing the judgment, the court must first determine whether the evidence supports the findings of fact and then whether the findings support the judgment. The court will not set aside a judgment unless it is clearly erroneous. A judgment is clearly erroneous only if a review of the record leaves the court with a firm conviction that a mistake

**2.** Reed Sign's first motion to dismiss, which was substantially similar to the current one, was denied at the February 28, 2000, hearing after the trial court granted Reed Sign's request for change of judge. Reed Sign re-

newed its request for dismissal with the two subsequent judges. The second motion was never ruled upon due to the change of judges; the third was denied and is the subject of this appeal.

has been made. The court may affirm the judgment on any legal theory supported by the findings. *S–Mart, Inc. v. Sweetwater Coffee Co., Ltd.,* 744 N.E.2d 580, 585 (Ind.Ct.App.2001), *trans. denied.*

The trial court concluded that Reed Sign had actual notice of the TRO based on: (1) delivery of the TRO to Jay Reed on February 25, 2000; (2) service of the TRO upon counsel for Reed Sign; (3) the appearance by Reed Sign's counsel at the February 28, 2000 hearing; (4) the posting of the TRO at the job site; and (5) the fact that the workers at the site sat in their trucks and did not perform any work until shortly after the February 28, 2000 hearing. Appendix of Appellee at 187. The evidence in the record clearly supports these factual findings regarding the different ways in which Reed Sign had notice of the TRO. Reed Sign does not argue that any of these individual factual findings is inaccurate; rather, it argues that the individual service attempts to Jay Reed's residence, to its attorney, Dan May, and to Reed Sign's work site did not strictly comply with Trial Rules 4 through 5. We are convinced by the overwhelming evidence listed above that Reed Sign had actual notice of the TRO; thus, this finding is not erroneous.

## II. Jurisdiction[3]

### A. Standard of Review

A de novo standard is employed when this court reviews questions of whether personal jurisdiction exists. *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1231 (Ind.2000). When reviewing matters involving personal jurisdiction, the party challenging jurisdiction has the burden of establishing the lack thereof by a preponderance of the evidence. *Sohacki v. Amateur Hockey Ass'n of Illinois,* 739 N.E.2d 185, 188 (Ind.Ct. App.2000).

### B. Personal jurisdiction through service of the TRO[4]

Reed Sign primarily argues that as no summons was served along with the TRO, the court did not have personal jurisdiction over it. Reed Sign notes Trial Rule 4(A), which provides that "[t]he court acquires jurisdiction over a party … who … commences or joins in the action, *is served with summons* or enters an appearance, or who is subjected to the power of the court under any other law." (Emphasis supplied.) Thus, Reed Sign argues its actual knowledge of the suit was not sufficient for a finding of jurisdiction without Lynn Reid also attempting service of the summons.

Reed Sign also makes numerous arguments that the attempts at service Lynn Reid did make were defective, and thus insufficient to confer jurisdiction on the trial court. First, Reed Sign argues the service upon its attorney, Dan J. May, was

---

**3.** Reed Sign argues it was free to raise the issue of jurisdiction at any time notwithstanding Dan May's appearance at hearing on February 28, 2000, to argue his motion to dismiss. Indeed, Reed Sign raised the issue of personal jurisdiction at each and every hearing except for the *ex parte* hearing on February 25, 2000, at which it was not present.

**4.** Reed Sign's brief is largely devoid of pinpoint citations to help us determine where, within a decision, support for their contentions may be found. We direct Reed Sign to Indiana Appellate Rule 22(A), which states that citations to cases in briefs should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). We will not, on review, search through the authorities cited by a party in order to try to find legal support for its position. *Wright v. Elston,* 701 N.E.2d 1227, 1231 (Ind.Ct.App. 1998), *trans. denied.*

an invalid attempt at service upon a party's attorney under Trial Rule 5(B), as May was not counsel of record for Reed Sign at the time he was served on February 25, 2000. Next, Reed Sign argues the service upon Jay Reed, a corporate officer, at his personal residence was not valid service under Trial Rule 4.6, as the rule generally does not allow for service at the person's residence. Reed Sign argues that the summons left at its business address for Jay Reed was insufficient service under Trial Rule 4.6(C), as it did not contain an affidavit as described in Trial Rule 4.6(C). Finally, Reed Sign argues that Lynn Reid's leaving a copy of the TRO at its office did not satisfy Trial Rule 4.1(B), which requires that the summons be mailed as a follow-up after service.

We do not find the failure to serve a summons with the TRO to be fatal to Lynn Reid's attempts at service upon Reed Sign. Nor do we find it necessary to consider each of Reed Sign's individual arguments regarding improper service under Trial Rules 4 through 5. Rather, we find that the trial court did have jurisdiction over Reed Sign through the issuance and service of the TRO and through Reed Sign's actual knowledge of the order.

Under Indiana Trial Rule 4.15(F), no summons or service of process shall be set aside if either is reasonably calculated to inform the defendant of the impending action against him. Thus, Trial Rule 4.15(F) will prevent service of process which is technically deficient from defeating the personal jurisdiction of a court. *Barrow v. Pennington*, 700 N.E.2d 477, 478 (Ind.Ct. App.1998). See also *Gourley v. L.Y.*, 657 N.E.2d 448, 450 (Ind.Ct.App.1995), *trans. denied* ("[P]ersonal jurisdiction over a party will obtain by any method of service

which comports with due process ... [t]he minimal requirements of due process require only that notice be served in a manner reasonably calculated to inform the defendant of the pending action.") Lynn Reid's numerous attempts at service satisfy the requirements of Trial Rule 4.15(F) for a TRO. The most obvious evidence that the attempts at service were reasonably calculated to inform is that they were successful, as Reed Sign had actual knowledge of the TRO due to those attempts.[5]

■ As noted previously, Reed Sign alleges numerous procedural defects in the various service attempts and argues for close adherence to the procedural rules in Trial Rules 4 through 5. However, the reason for those requirements is to ensure that parties have notice and a right to be heard. For example, this court recently considered a similar service defect in *Boczar v. Reuben*, 742 N.E.2d 1010, 1016 (Ind. Ct.App.2001):

> Here, the purpose behind T.R. 4.1(B)— the requirement to mail an additional summons separately after leaving a copy of the complaint and summons at the dwelling place—is to increase the odds that the served party will receive timely notice of the suit. The Boczars had timely notice of the suit initiated against them. Under the circumstances here, to require the mailing of a separate summons would neither further T.R. 4.1(B)'s purpose nor secure the just determination of this action. Therefore, despite Reuben's failure to mail the separate summons, the trial court acquired personal jurisdiction over the Boczars.

In this case, the trial court acquired personal jurisdiction over Reed Sign despite the lack of summons along with service of

---

**5.** This is not to say that actual notice satisfies this requirement. Rather, actual notice following service attempts is strong evidence that the attempts were "reasonably calculated to inform" Reed Sign of the TRO.

the TRO. Just as in *Boczar,* to require the summons here would not further secure the just determination of this action. Reed Sign has not been prejudiced in its right to be heard in this matter because it had actual notice of the TRO following Lynn Reid's attempts at service.

■■■■■ In addition, Trial Rule 65(D) provides in pertinent part that "[e]very order granting temporary injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and *upon those persons* in active concert or participation with them *who receive actual notice of the order by personal service or otherwise."* (Emphasis supplied.) This rule does not specify that it is binding upon those parties only after service of summons. Indeed, a party may be liable for violating an injunction even without proper service upon that party. In *Bratton v. MGK, Inc.,* 587 N.E.2d 134 (Ind.Ct.App.1992), we noted an exception to the general rule that an injunction or restraining order must be served in accordance with Trial Rules 4 through 5 on the person enjoined or restrained by the order. If a person is shown to have *actual knowledge* of an injunction, he may be liable if he violates its provisions. *Bratton,* 587 N.E.2d at 136. This exception reflects that Trial Rule 4.15(F)'s text allows for more than one method of notice for a person to be bound by a lawful injunction. If a party is bound by an injunction or TRO through actual knowledge, then the trial court has necessarily acquired personal jurisdiction over that party for purposes of the TRO or injunction.

■■■■ There is a distinction for a defendant between the consequences of not having actual notice of a TRO and not having notice of another type of suit, such as a civil action for monetary damages or a contempt action. A plaintiff has no remedy against a defendant who violates a TRO without actual notice of that order. However, a plaintiff may be awarded a default judgment that is binding against a defendant who did not have actual notice of the suit. Thus, the limited, temporary nature of the relief to a plaintiff and of the harm to a defendant in a TRO proceeding mandates a slightly more flexible approach to the service rules when actual notice is accomplished. Furthermore, Trial Rule 65(B) provides that no TRO shall be in effect more than ten days without additional procedural safeguards. Thus, it may be difficult for a plaintiff to strictly comply with all service requirements before the order expires.

■■■■ Finally, Reed Sign argues that the TRO was void because the trial court did not order the payment of security as required in Trial Rule 65(C). We disagree. This court has previously reviewed a substantially similar question in *Pickett v. Pelican Service Associates,* 481 N.E.2d 1113, 1120 (Ind.Ct.App.1985), *trans. denied:* "Our Supreme Court has determined defects in an injunction bond are mere error not sufficient to void the decree ... [t]herefore, we affirm the judgment granting the preliminary injunction but remand to the trial court for determination of sufficient bond under T.R. 65(C)." Ordinarily, remand for determination of a bond is the proper remedy for this procedural error. *See Kennedy v. Kennedy,* 616 N.E.2d 39, 43 (Ind.Ct.App.1993), *trans. denied.* However, the bond is designed to protect the party restrained under a TRO from any harm due to their compliance with the order. Since the TRO has expired, and since Reed Sign did not comply with the order, remand for determination of a bond would be useless in this case.

### III. Contempt

#### A. Standard of Review

Whether a party is in contempt is a matter left to the sound discretion of the trial court, and we reverse the trial court's finding of contempt only if it is against the logic and effect of the evidence before it or is contrary to law. When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Topolski v. Topolski*, 742 N.E.2d 991, 994 (Ind.Ct.App. 2001).

#### B. Order Requiring Payment of Attorney Fees and Removal of the Sign

Reed Sign makes several arguments regarding the contempt order. First, Reed Sign argues the order requiring it to dismantle its sign now that the TRO has expired is costly and useless, since it now possesses valid permits, from both the county and the state, to have the sign. "The law does not require a party to do a useless act." Br. of Appellant at 28. We disagree. The dismantling of Reed Sign's billboard would not be useless because it would return Lynn Reid to the position he was in before Reed Sign violated the TRO. The trial court did not abuse its discretion in making this order.

Next, Reed Sign argues that the trial court's findings leading to its contempt ruling are erroneous. In particular, Reed Sign takes issue with the trial court's findings that Jay Reed was served by sheriff's deputy on February 25, 2000, and that

counsel for Reed Sign was mailed a copy of the injunction on February 25, 2000. Br. of Appellant at 29. Reed Sign argues these findings are erroneous due to the procedural defects previously outlined in section II(B) above. However, as we noted previously, a person may be found in contempt after a showing of actual notice of the order violated regardless of whether proper service was accomplished:

> It is generally true that notice of an injunction or restraining order must be served on the person or persons enjoined or restrained by the order ... There exists, however, an exception to this general rule. Where it can be shown that a person had actual knowledge of the restraining order or injunction he may be held liable for violating the provisions of the order ... There is no presumption that affected persons have actual knowledge of an order; knowledge must be established from the facts presented to the trial court ... Actual knowledge may be proven by circumstantial evidence ... or simply inferred from the facts ...

*Bottoms v. B & M Coal Corp.*, 405 N.E.2d 82, 89 (Ind.Ct.App.1980). In this case, the facts presented to the trial court clearly show that Reed Sign had actual notice of the TRO due to the several service attempts by Lynn Reid. Regardless of whether Lynn Reid's service attempts strictly complied with the service rules with respect to the TRO, there was no abuse of discretion here.[6]

Reed Sign also argues the sanctions against it were improper criminal, not civil, contempt sanctions, as the order requiring it to remove the sign was to punish it. We find no evidence in the record or otherwise that this sanction was

---

6. We also note the record indicates Reed Sign was served with summons regarding the contempt petition on March 29, 2000. Appendix of Appellee at 97. Thus, it appears that the procedural requirements for service were met with respect to the contempt petition.

intended to be punitive; nor does Reed Sign direct us to any such evidence or provide us with any citations in support of its theory that the sanction of removing the sign is punitive. Thus, this argument is waived.

Reed Sign argues the attorney fees award is excessive and not supported by evidence. Reed Sign argues Lynn Reid "filed no affidavit at the hearing, nor did his attorney offer evidence of the amount of fees expended in the litigation of the contempt matter." Br. of Appellant at 31. Reed Sign also claims it "was not given any opportunity to challenge the attorney fee request, or cross examine the claimant on the fees." Br. of Appellant at 32.

■ We first note Lynn Reid requested attorney fees in its verified petition for contempt filed on March 3, 2000; therefore, Reed Sign had notice of the request for fees throughout the proceedings. Appendix of Appellee at 49. Next, the issue of the amount of attorney fees was not argued at the October 31, 2000, hearing. However, Lynn Reid filed proposed findings of fact and conclusions of law on December 22, 2000, and that document included a proposed order awarding him attorney fees of $7500.00. Appendix of Appellee at 180. The trial court issued its order awarding Lynn Reid that amount on February 2, 2001. Counsel for Lynn Reid then filed an affidavit on February 14, 2001, detailing his time spent on the representation and his hourly fee for services. Therefore, the trial court was not presented with evidence regarding attorney fees until after issuing its order awarding those fees.

While the taking of evidence on reasonable attorney fees is a preferable practice, we note that the trial court may take judicial notice of what constitutes a reasonable amount of attorneys fees. Such practice should be limited to routine cases

involving relatively small amounts. *Zebrowski and Associates, Inc. v. City of Indianapolis, By and Through its Bd. of Directors for Utilities of its Dept. of Public Utilities,* 457 N.E.2d 259, 264 (Ind.Ct.App. 1983). A temporary restraining order and contempt action for violation thereof is a routine case that does not ordinarily require the taking of evidence to determine attorney fees. Moreover, a $7500.00 fee for a case that began over a year ago and that has required multiple filings and court appearances is not unreasonable on its face. Therefore, the trial court did not abuse its discretion in making the attorney fees award.

## IV. Appellate Fees

■ Indiana Appellate Rule 66(E) provides that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." We may award appellate attorney fees when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Kuehl v. Hoyle,* 746 N.E.2d 104, 110 (Ind. Ct.App.2001). Although this rule provides this court with discretionary authority to award damages in favor of the appellee when we affirm the judgment, we must use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect upon the exercise of the right to appeal. *Id.* A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish lack of merit unless an appellant's contentions and arguments are utterly devoid of all plausibility. *Id.*

■ In its reply brief, Reed Sign argues that "Reid's wilful failure to issue

summons and/or mis-directing service of process in contravention to the mandate and/or prohibitions of the trial rules warrant an award appellate [sic] fees." Reply Brief of Appellant at 9. Reed Sign further argues that "Reid has failed to make a cogent argument or cite any authority for his total failure to issue process as mandated by the trial rules entitling Reed, Inc. to attorney fees." *Id.* We are not inclined to award appellate fees against a party whose arguments and citations to authority have successfully convinced both the trial court and this appellate court.

■ Lynn Reid also requests appellate fees based upon Reed Sign's willful and flagrant violation of the TRO, its repetitive filing of motions and spurious arguments, its legally groundless appeal, and its failure to follow the Rules of Appellate Procedure. Brief of Appellee at 35. We have previously noted Reed Sign's failure to follow the appellate rules, and the contempt sanction is itself a suitable response to the violation of the TRO. In addition, we note that Reed Sign's motion to dismiss was filed in varying forms at least three different times, excluding this appeal, with substantially similar arguments each time. However, we also note that three different judges heard portions of this case throughout the trial court proceedings due to motions for change of judge filed by both parties. It appears to us from a review of the record that some of the multiple filings were due to time delays in ruling on those motions following the changes of judges rather than due to needless persistence by Reed Sign. Indeed, Lynn Reid filed a request for a contempt finding not once, but twice, apparently for much the same reason. Given the particular circumstances of this case, we do not find the multiple filings sufficient cause for an award of fees.

■ We are thus left to consider whether this appeal is "legally ground-less," as Lynn Reid suggests. At first glance, the answer to the question of whether an *ex parte* TRO is valid against a party who has not received proper notice by summons and complaint seems obvious. However, this court has not previously addressed this exact question. Furthermore, we find Reed Sign's question regarding the procedural rights of parties thrust into litigation upon relatively short notice sufficiently important that it is not an argument devoid of all plausibility. Thus, we deny Lynn Reid's request for appellate fees.

### Conclusion

We hold that the trial court did not err in denying Reed Sign's motion to dismiss for lack of personal jurisdiction. Furthermore, the trial court did not abuse its discretion in finding Reed Sign in contempt and ordering sanctions against it. Finally, neither party is entitled to the appellate fees requested.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.