# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**NICHOLAS J. WAGNER**
Stewart & Stewart Attorneys
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID L. TAYLOR**
**CHRISTOPHER D. SIMPKINS**
Taylor Law Firm, P.C.
Indianapolis, Indiana

FILED

Dec 10 2013, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID DIDION and KRISTI DIDION as Parents and Legal Guardians of BRAYDEN DIDION, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1303-PL-232 |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Jeffrey D. Todd, Judge
Cause No. 27D01-1002-PL-184

**December 10, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

In June of 2008, Braydon Didion was playing in the yard of a Gas City house ("the House") being lived in by Michael Carl when he was allegedly bit in the face by Michael's dog and injured ("the Loss"). Von Carl and Ginger Hawk, who lived in Kentucky at the time, owned the House and had home owner's insurance pursuant to a policy with Appellee Auto-Owners Insurance Company ("the Policy"). Michael did not notify Auto-Owners, Von, or Ginger of the Loss. Braydon's parents, Appellants David and Kristi Didion ("the Didions"), filed suit against Michael and eventually named Ginger as a defendant. Ultimately, default judgment was entered against Michael and Ginger, although the judgment as to Ginger was subsequently set aside. Most likely in July of 2009, Ginger became aware of the Loss and the lawsuit and soon notified her insurance agent of both. In February of 2012, Auto-Owners filed a complaint, seeking a declaratory judgment that it had no liability for the Loss. The trial court entered summary judgment in favor of Auto-Owners. The Didions claim on appeal that the trial court erred in concluding that (1) Michael was not an insured under the terms of the Policy and (2) Auto-Owners was not given timely notice of the Loss. Concluding that Michael was not an insured and that Auto-Owners was not given timely notice of the Loss pursuant to the terms of the Policy, we affirm.

## FACTS AND PROCEDURAL HISTORY

In June of 2008, Von and Ginger owned the House, which was being lived in by Michael, Ginger's cousin. Ginger, who was born in 1957, had lived in the House at one time, but had not done so since she was sixteen or seventeen years old. Ginger lived in Kentucky with her husband and son, and had lived in her current residence for approximately eight years. Ginger checked on the House "probably every couple months" but "would just drive

by, drive down the driveway, or drive down Broadway in front of the propery[,]" never going inside. Appellant's App. p. 35. Von and Ginger had secured home-owner's coverage pursuant to the Policy, which provided in part as follows:

**HOMEOWNERS POLICY**
**FORM 3**
**INSURING AGREEMENT**

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury**, **property damage**, and **personal injury** which occur during the policy term shown in the Declarations.

**DEFINITIONS**

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

…

2.    **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

….

5.    **Insured** means:
      a.    **you**;
      b.    **your relatives**; and
      c.    any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

….

13.   **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption.

….

**WHAT TO DO IN CASE OF LOSS**

….

2.    **PERSONAL LIABILITY PROTECTION**
      In the event of **bodily injury**, **property damage** or **personal injury**, the **insured** must

3

      a.     notify **us** or **our** agency as soon as possible. The notice must give:
- (1)    **your** name and policy number;
- (2)    the time, place and circumstance of the **occurrence** or **incident**; and
- (3)    the names and addresses of injured persons and witnesses;

      b.     promptly send us any legal papers received relating to any claim or suit:

      c.     cooperate with us and assist us in any matter relating to a claim or suit[.]

Appellant's App. pp. 190-91, 213-14 (all emphases in original).

On June 16, 2008, Braydon was allegedly bit in the face by Michael's dog as Braydon played in the yard of the House. On July 24, 2008, the Didions filed a complaint for money damages against Michael, amending the complaint to add Ginger on September 30, 2008. On February 9, 2009, the Didions filed a motion for default judgment, which the trial court granted the next day. On April 16, 2009, the trial court issued an order fixing the Didions' damages at $250,000.00. At some point, most likely in July of 2009, Ginger notified her insurance agent of the Loss and the lawsuit. Ginger had first heard of the Loss and the lawsuit after learning that there was a lien on the House and then speaking with Michael on the telephone. Very soon after, she notified Auto-Owners of both. On September 1, 2009, the trial court granted Ginger's motion to set aside the default judgment against her.

On February 25, 2010, Auto-Owners filed a complaint for declaratory judgment on the issue of liability against Michael, Ginger, and the Didions. On September 28, 2012, the Didions filed a motion for partial summary judgment against Auto-Owners, to which Auto-Owners responded on October 30, 2012. On February 20, 2013, the trial court granted

summary judgment in favor of Auto-Owners, concluding, *inter alia*, that

1.	Michael Carl did not reside with Von Carl or Ginger Hawk at the time of the Incident.

	….

4.	Michael Carl is not an insured under the Policy.

5.	Michael Carl failed to provide timely and reasonable notice of the Incident, claims or Tort Lawsuit of Didions to Auto-Owners, which was a condition precedent to coverage under the Policy.

Appellant's App. pp. 17-18.

## DISCUSSION AND DECISION

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id*.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id*. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id*. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*.

### I. Whether Michael Was an "Insured" Under the Policy

The Didions argue that the trial court erred in concluding that Michael was not an insured pursuant to the policy. Specifically, the Didions contend that Michael is a blood

5

relative of Ginger and that he "resided" with Ginger in the Gas City house, making him an

"insured."

> [B]ecause the interpretation of a contract is a matter of law, cases involving the interpretation of insurance contracts are particularly appropriate for summary judgment.
>
> Moreover, provisions of insurance contracts are subject to the same rules of construction as other contracts. We interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract. In accomplishing that goal we must construe the insurance policy as a whole, rather than considering individual words, phrases, or paragraphs. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning.
>
> Additionally, we must accept an interpretation of the contract language that harmonizes the provision rather than one which supports a conflicting version of the provisions. Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. If reasonably intelligent persons honestly may differ as to the meaning of the policy language, the policy is ambiguous. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

*Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 692-93 (Ind. Ct. App. 2002) (citations

omitted).

> Contracts for insurance are subject to the same rules of interpretation and construction as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467; *Sharp v. Indiana Union Mut. Ins. Co.* (1988), Ind. App., 526 N.E.2d 237, *trans. denied*. Whenever summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Kutche Chevrolet, Inc. v. Anderson Banking Co.* (1992), Ind. App., 597 N.E.2d 1307. Generally, construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *Id.* However, if reasonable minds differ as to the meaning of the contract's terms, then an ambiguity exists rendering summary judgment inappropriate. *Id.*

*Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 354 (Ind. Ct. App. 1995), *trans. denied*.

As a general rule, "[w]here provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity." *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998).

There is no dispute that Michael is a blood relative of Ginger's, but he would have to "reside" with her in the House in order to qualify as an insured pursuant to the Policy. "Reside" may be defined as "[t]o be in residence; to occupy a fixed abode; [or] to dwell permanently or continuously (reside in the district)." WILLIAM P. STATSKY, WEST'S LEGAL THESAURUS/DICTIONARY 655 (1985). While we acknowledge that the word "reside" may be, perhaps, not without some inherent ambiguity, that potential ambiguity is not even remotely broad enough to support a conclusion that Ginger "resided" in the House with Michael. The Indiana Supreme Court has made it clear that, while ambiguities will be strictly construed against the insurer, "for ambiguity to confer coverage, the covered item must be somewhere within the circle of ambiguity." *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1057 (Ind. 2001).

The uncontradicted designated evidence indicates that Ginger lived permanently and continuously in Kentucky with her immediate family and drove by the House every couple of months to check on its condition, never even going inside. While Ginger had lived in the House in the past, she had not done so since the early 1970s. There is no designated evidence tending to show that Ginger had any personal property in the House or that she had ready access to the house or any of its contents. Were we to interpret the word "reside" in the

7

broad fashion urged by the Didions, it would render similar "insured' clauses in other insurance contracts meaningless and without effect. In summary, we do not believe that any ordinary policyholder of reasonable intelligence would understand an absentee landlord who does no more than drive by a house every so often to "reside" in that house. The trial court did not err in concluding that Michael was not an "insured" under the Policy.[1]

## II. Whether Auto-Owners Received Adequate Notice

The Didions also contend that the trial court erred in concluding that Auto-Owners did not receive timely notice of the Loss. Although the trial court concluded that notice was inadequate because Michael failed to notify Auto-Owner's, we have already concluded that Michael was not an "insured." As previously mentioned, the notice provision of the Policy provides, in part, that, "In the event of bodily injury, property damage or personal injury, *the insured* must … notify us or our agency as soon as possible." Appellant's App. p. 214 (bold emphasis removed and italics added). Michael had absolutely no obligation to notify Auto-Owners of the Loss, and his failure to do so is therefore irrelevant. The only question, then, is whether Ginger, as a named "insured" and party to the underlying lawsuit, provided adequate notice to Auto-Owners pursuant to the policy.

> We have held that the notice requirement is "material, and of the essence of the contract." *London Guarantee & Accident Co. v. Siwy*, 35 Ind. App. 340, 66 N.E. 481, 482 (1903). The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its

---

[1] The Didions rely on our decision in *Erie Insurance Exchange v. Stephenson*, 674 N.E.2d 607 (Ind. Ct. App. 1996), a case in which we found coverage pursuant to an homeowner's liability policy even though the owner no longer lived in the house. *Id*. at 610. In that case, however, the question was not whether the owner "resided" in the house but whether she could be a member of the "household" despite not living in the house. *Id*. Consequently, our decision in *Erie Insurance Exchange* is inapposite and does not help the Didions.

8

insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993), *trans. denied*. When the facts of the case are not in dispute, what constitutes reasonable notice is a question of law for the court to decide. *Id.* Unlike other policy provisions requiring the cooperation of the insured, noncompliance with notice of claim provisions resulting in an unreasonable delay triggers a presumption of prejudice to the insurer's ability to prepare an adequate defense. *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984). The Indiana Supreme Court stated in *Miller* that:

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice.

*Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 277-78 (Ind. Ct. App. 1999).

We must conclude that Ginger's failure to notify Auto-Owners of the Loss until over year had passed did not satisfy her obligation to do so "as soon as possible." We have little trouble concluding that the length of delay in this case was unreasonable. The facts of this case amply support our conclusion: in the over one year that passed between the Loss and Ginger's notification to her agent, the Didions' lawsuit had not only been filed but had already proceeded to default judgment regarding liability and damages. In other words, Auto-Owners had been denied of all opportunity to timely investigate the Loss and to control the litigation from the early stages. *See, e.g.*, *Miller*, 463 N.E.2d at 266 (concluding that summary judgment should be entered in favor of three insurance companies which received notice of the accidents giving rise to liability one month, six months, and seven months after their occurrence and which received notice of the resulting lawsuits as early as five days after filing).

9

Moreover, we cannot excuse Ginger's delay on the basis that she was ignorant of the Loss and notified Auto-Owners almost immediately upon being made aware of it. Indiana courts have been consistent in holding that there is no "discovery rule" in the insurance context. In *Brunner v. Economy Preferred Insurance Co.*, 597 N.E.2d 1317 (Ind. Ct. App. 1992), we adopted the rule that, for purposes of notice provisions in insurance contracts, "the insured's failure to discover the loss until some time after it occurred was immaterial[.]" *Id*. at 1319; *see also United Techs. Auto. Sys., Inc. v. Affiliated FM Ins. Co.*, 725 N.E.2d 871, 875 (Ind. Ct. App. 2000) ("In addition, we note that Indiana courts have followed the reasoning of the vast majority of state courts in holding that failure to discover damages does not toll the contractual period of limitation; rather, a policy's period of limitation begins to run at the time the loss occurs, regardless of whether the insured knew of it."), *trans. denied*. Ginger's obligation to report the Loss to Auto-Owner's was not altered by her ignorance of it. The trial court correctly concluded that Auto-Owner's did not receive timely notice.

We affirm the judgment of the trial court.

MAY, J., concurs.

BAILEY, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

DAVID DIDION and KRISTI DIDION as Parents )
and Legal Guardians of BRAYDEN DIDION, )
                                        )
      Appellants, )
                                        )
          vs. )     No. 27A02-1303-PL-232
                                        )
AUTO-OWNERS INSURANCE COMPANY, )
                                        )
      Appellee. )

**BAILEY, Judge, concurring in result**

I agree with the majority that the trial court did not err when it entered summary judgment against the Didions on the question of the availability of insurance coverage for Michael under the homeowners' insurance policy of his sister, Ginger, and I concur in the majority's reasoning on that point. I write separately because I do not think there is any need to examine the question of the timeliness of notice.

I reach this conclusion for two reasons. First, the lack of coverage inquiry is dispositive. Michael does not fall within the scope of an insured under the policy, and thus I think we need not reach the question of timely notice of an occurrence. And "statements not necessary in the determination of the issues presented are <u>obiter dictum</u>. They are not

11

binding and do not become the law." <u>Koske v. Townsend Eng'g Co.</u>, 551 N.E.2d 437, 443 (Ind. 1990).  It would be better, then, for us to remain silent on the issue.

Second, while the majority is correct that Indiana courts have regularly held as untimely notice of an occurrence or claim that occurred over the span of time at issue here, it does not appear that our courts have been faced squarely with a case like this one.  Here, the party responsible for providing notice of an occurrence under the policy appears not to have been aware of an occurrence, might have been actively prevented from obtaining the requisite knowledge, and the policy language required notice "as soon as possible."  Neither the majority nor the parties cite any cases that fit this fact pattern. Since we need not reach that issue, and in the apparent absence of prior decisive law, I think it better as a matter of judicial restraint that we not comment on the matter and permit our courts to address such matters when those issues are squarely and necessarily before them.

For the foregoing reasons, I concur with the result reached by the majority.