

FILED

Sep 18 2020, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Douglas K. Walker
Law Office of David Gladish, P.C.
Highland, Indiana

ATTORNEYS FOR APPELLEES

John E. Hughes
Kevin G. Kerr
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DSG Lake, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> John Petalas, Individually and as the Lake County Auditor, and Lake County, Indiana, <br> *Appellees-Defendants* | September 18, 2020 <br><br> Court of Appeals Case No. 20A-PL-370 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Jeffrey W. Clymer, Judge <br><br> Trial Court Cause No. 64D02-1711-PL-10435 |

**Crone, Judge.**

## Case Summary

In 2010, the Lake County Board of Commissioners executed a contract with DSG Lake, LLC, pursuant to which DSG reviewed all property tax deductions claimed over the past ten years, collected any improper deductions, and retained a percentage as compensation. The contract was renewed annually

through 2016. In the meantime, a dispute arose between DSG and various state and local officials regarding the appropriate lookback period. A draft contract renewal for 2017 was not approved by the Commissioners.

[2] In 2017, DSG filed a complaint against Lake County and Lake County Auditor John Petalas (collectively Appellees), alleging breach of contract and intentional interference with DSG's business and contractual relationships. The trial court entered summary judgment for Petalas on all of DSG's claims. DSG filed a motion for partial summary judgment as to the lookback period, which the trial court denied. The County filed a motion for summary judgment, which the trial court granted on the basis that it lacked subject matter jurisdiction to decide DSG's claims. DSG now appeals these rulings. We affirm the entry of summary judgment for Petalas and the denial of partial summary judgment for DSG, and we reverse the entry of summary judgment for the County and remand with instructions to dismiss DSG's claims against the County for lack of subject matter jurisdiction.

## Facts and Procedural History[1]

[3] The relevant facts are undisputed. In 2009, the legislature enacted Indiana Code Section 6-1.1-36-17, which allows counties to pursue the collection of ineligible homestead property tax deductions; at that time, the statute did not

---

[1] Our review has been significantly hampered by both sides' argumentative statements of fact. Appellees have filed motions to strike DSG's amended brief and amended reply brief, which we deny by separate order.

specify a lookback period. On September 15, 2010, a contract was executed "by and between" DSG and the Commissioners, "representing county government under the laws of the State of Indiana," that reads in pertinent part as follows:[2]

> WHEREAS each year numerous property tax deductions have been and are being claimed on real estate in Lake County, Indiana; and,
>
> WHEREAS, legitimate questions exist in regard to the propriety of a number of the claimed deductions now and in past years; and,
>
> WHEREAS, there is a need to examine each of these deductions to determine their propriety; and[,]
>
> WHEREAS, if a legitimate issue as to said propriety exists, then there is a need to identify the claimant of said deduction and the amount of taxes that are asserted to be due and owing to the County as a result of the improper deduction; and,
>
> WHEREAS, there is a further need to collect the amount of taxes asserted to have been improperly collected; and,
>
> WHEREAS, DSG desires to perform the services necessary to determine the propriety of said deductions, the identity of the persons having claimed said deductions, the amount of taxes owing to the County as a result therein, and to make collection of said amounts.
>
> NOW, THEREFORE, in consideration of the promises contained herein, and other good and valuable

---

[2] We have replaced all references to "Contractor" with "DSG."

consideration, the parties agree as follows:

1. **Nature and Scope of Services:**

a) *DSG shall review all tax deductions claimed against the assessed value of real property in Lake County, Indiana for the past ten (10) years.* DSG shall determine, based upon reasonable legal interpretation, the propriety of said deductions. In all instances where DSG is of the opinion that there is a legitimate basis to challenge the propriety of said deductions, DSG shall ascertain the identity of the person or persons claiming said deduction, the claimed amount of monies due and owing to the County as a result of said deductions, and shall proceed to seek collection of said amounts by all legal means available, including litigation through the lower court level.

DSG shall maintain a list of said claims, including amounts asserted, and provide copies to the Lake County Auditor and the Commissioners' Attorney.

….

2. **Cooperation:**

The County agrees that all county offices, officers, departments, department heads, employees, agents, servants and contractors shall cooperate with DSG in regard to its services under this contract and shall provide all pertinent and relative [sic] documents, data and information, whether in electronic format or otherwise, and expedite DSG's collection efforts herein.

3. **Compensation:**

> DSG shall be compensated for its services on a contingency basis only. DSG's compensation shall be twenty-five percent (25%) of any amount of monies received by the County on claims identified and listed by DSG and submitted to the Lake County Auditor and Commissioners' Attorney.
>
> ….
>
> 5. **Terms of Agreement:**
>
> This contract shall be for a term commencing on the effective date herein and expiring the 31st day of December, 2011.
>
> 6. **Primary Contract** [sic]**:**
>
> Lake County designates the Lake County Auditor and the Commissioners' Attorney as the primary contacts with DSG. Lake County may change its primary contact at anytime [sic] by giving written notice to DSG.

Appellant's App. Vol. 6 at 33-35 (italicized emphasis added; underlining omitted). The contract was signed by DSG's managing member, David Gilyan, three Commissioners, and Lake County Auditor Peggy Katona. Each year from 2011 to 2015, a renewal agreement was executed to modify article 5 of the contract to extend its term to December 31 of the following year.

[4] On September 20, 2010, Lake County Auditor's Office finance director Michael Wieser sent an email to Tammy White of the Indiana State Board of Accounts asking, "Can we 'back tax' for more than three years?" Appellant's App. Vol. 5

at 129. The record before us does not indicate whether White replied to Wieser.

[5] On October 14, 2010, Indiana Department of Local Government Finance (DLGF)[3] general counsel Micah Vincent sent an email to Wieser, with a copy to White, that reads in relevant part,

> For a number of years, the DLGF has taken the position that the three-year limitations period in IC 6-1.1-9-4 applies to the removal of ineligible deductions. A deduction results in a change to the assessed value of the property. This is clear from the text of the deductions chapter: "For each year that a deduction from the assessed value of tangible property[4] is allowed, the assessed value remaining after the deduction is the basis for taxation of the property." Ind. Code 6-1.1-12-0.5. Because an improperly received deduction results in an undervaluing of the property for taxation, IC 6-1.1-9-4 can be said to apply to and limit the period for retroactively adjusting the assessed value to compensate for an ineligible homestead deduction.
>
> For a number of reasons, the DLGF does not believe that the ten-year limitations period in IC 6-1.1-22-10 (or "Collection Statute") applies to the removal of an ineligible homestead deduction.

*Id.* at 131.

---

[3] We have replaced all references to the Department with "DLGF" in various documents quoted below.

[4] Indiana Code Section 6-1.1-1-19 defines "tangible property" for purposes of Chapter 6-1.1-1 as both "real property and personal property[.]"

[6] We pause here to note that Indiana Code Section 6-1.1-9-4(a) provides, "Real property may be assessed, or its assessed value increased, for a prior year under this chapter only if the notice required by section 1 of this chapter[5] is given within three (3) years after the assessment date for that prior year." And Indiana Code Section 6-1.1-22-10 provides,

> (a) A person who is liable for property taxes under IC 6-1.1-2-4 is personally liable for the taxes and all penalties, cost [sic], and collection expenses, including reasonable attorney's fees and court costs, resulting from late payment of the taxes.
>
> (b) A person's liability under this section may be enforced by any legal remedy, including a civil lawsuit instituted by a county treasurer or a county executive to collect delinquent taxes. One (1) action may be initiated to collect all taxes, penalties, cost, and collection expenses levied against a person in the same county for one (1) or more years. However, an action may not be initiated to enforce the collection of taxes after ten (10) years from the first Monday in May of the year in which the taxes first became due. An action initiated within the ten (10) year period may be prosecuted to termination.

[7] Vincent's email continued,

---

[5] At that time, Indiana Code Section 6-1.1-9-1 provided,

> If a township assessor (if any), county assessor, or county property tax assessment board of appeals believes that any taxable tangible property has been omitted from or undervalued on the assessment rolls or the tax duplicate for any year or years, the official or board shall give written notice under IC 6-1.1-3-20 or IC 6-1.1-4-22 of the assessment or increase in assessment. The notice shall contain a general description of the property and a statement describing the taxpayer's right to a review with the county property tax assessment board of appeals under IC 6-1.1-15-1.

First, as our Supreme Court has explained, it is just as important to recognize what a statute doesn't say as it is to recognize what it does say. Based on the text of the Collection Statute, this ten-year period applies to tax liability that has already been imposed by issuance of the tax bill, remains uncollected, and is delinquent. It does not, by its express terms, apply to liability that could have been imposed had all applicable assessment and deduction rules been observed at the time the liability was calculated. The Collection Statute makes no reference to deductions, credits, homesteads, or changes to assessed value.

Second, the Collection Statute establishes a ten-year limitations period "to collect delinquent taxes." No action may be initiated "to enforce the collection of taxes after ten (10) years from the first Monday in May of the year in which the taxes first became due." IC 6-1.1-22-10(b). In other words, the limitations period starts running when the taxes first become due, that is, when the liability is officially imposed in the form of a tax bill. The tax bill notifies the person not just that liability has been imposed for that assessment year, but also the extent of that liability.

Third, nothing in the Collection Statute indicates that liability, once imposed, can be re-imposed in a different amount after re-determination of all assessment and deduction factors up to ten years later. The length of the period itself would indicate that a known, fixed, imposed, and billed tax liability is intended. The longer the limitations period for re-opening and re-imposing liability, the greater the risk of error from the passage of time. (Of course, fixed liability is subject to penalty and collections costs that accrue.)

Appellant's App. Vol. 5 at 131 (citations omitted).

[8] On May 27, 2012, DLGF Commissioner Brian Bailey sent an email to Gilyan that reads in pertinent part,

DLGF's position expressed in the October 14, 2010 e-mail from Micah Vincent to Mike Weiser [sic] stands. Please note that Mr. Vincent's October 14, 2010 e-mail copied Tammy White of the State Board of Accounts. She supervises counties. It's my understanding that State Board of Accounts also takes the position that the limitations period for penalizing homestead ineligibility may not exceed three years. Lake County officials and their advisors and vendors may want to keep that in mind as they consider both the lawfulness and possible repercussions of actions informed by your counsel.

Appellant's App. Vol. 6 at 44.

[9] On June 5, 2012, Katona's counsel Randy Wyllie wrote a letter to Gilyan that reads,

Pursuant to our May 31, 2012 office conference with yourself and Jim Hughes [chairman of SRI, Inc., which assisted DSG in providing services under the contract], please be advised that we met with our client, Lake County Auditor Peggy Katona on June 5, 2012, to review the tax collection issues for property owners who have obtained improper homestead deductions.

Ms. Katona has advised that she would like our law firm to begin the process to obtain an Indiana Attorney General's opinion regarding the dispute as to which limitation period controls in these improper homestead deduction situations. As you know, the dispute is between either the ten (10) year limitation period outlined in your recent memorandum of law or the three (3) year limitation period espoused by the DLGF in its various correspondence to the Lake County Auditor's Office.

In addition, given this uncertainty in the law, Ms. Katona has advised us to instruct you that all new collection attempts made *from this date forward* by yourself and/or [DSG] shall be based

upon the three (3) year limitation period only *and not* the ten (10) year limitation period. Please ensure that all future collection efforts reflect this current position of the Lake County Auditor. Obviously, in the event that the Indiana Attorney General's anticipated written opinion agrees with your position, as outlined in your memorandum of law, the ten (10) year limitation period will be utilized from that date forward. We will keep you posted regarding the Attorney General's opinion.

Appellant's App. Vol. 5 at 104 (underlining omitted). As indicated below, the record suggests that the attorney general may have issued such an opinion, but it does not appear in the record before us.

[10] On August 21, 2012, the Commissioners' counsel, John Dull, wrote a letter to Bailey, Katona, and DLGF general counsel Cathy Wolter expressing his disagreement with Vincent's position and opining that the ten-year limitation period applies. On September 17, 2012, Wolter wrote a letter to Dull that reads in pertinent part,

> The DLGF respects your duty to advise your clients and cannot interfere with that duty. Pursuant to IC 6-1.1-35-1, however, it is the duty of the DLGF to interpret the property tax laws of this state.[6] The legal conclusions stated in your Opinion are contrary to the DLGF's interpretation of the statutes related to the legal consequence of a determination of ineligibility for a standard homestead deduction.

---

[6] Indiana Code Section 6-1.1-35-1 provides that the DLGF shall, among other things, "interpret the property tax laws of this state" and "instruct property tax officials about their taxation and assessment duties[.]"

Appellant's App. Vol. 2 at 109. Wolter reaffirmed and incorporated Vincent's opinion and noted that

> prior to 2009 there was no mechanism within the homestead deduction-homestead credit statutes that provided for collection of an ineligible homestead deduction or credit. Because applying an ineligible homestead deduction results in an undervaluing of the property, the three year limitations period in IC 6-1.1-9-4 applies for such properties prior to July 1, 2009.
>
> IC 6-1.1-22-10, on the other hand, establishes a ten-year limitations period to collect "delinquent taxes." The ten year period enunciated in that statute commences when the taxes first become due. A tax bill is simply an elaborate form of notice to the taxpayer of his tax liability, the derivation of the total, and the payment due date. Under IC 6-1.1-2-4, the owner of any real property on the assessment date of a year is liable for the taxes imposed that year on the property. The imposition of taxes is evidenced by the tax bill. Under IC 6-1.1-22-10, a taxpayer is not liable for taxes that were not imposed.

*Id.* Wolter then expounded on Indiana Code Section 6-1.1-36-17 and ultimately concluded that because the statute "was not in existence prior to July 1, 2009 and was not made retroactive, the language of that statute cannot be used by auditors to attempt collection for homestead deductions they believe to have been ineligible prior to July 1, 2009. Going forward, the statute speaks for itself." *Id.* at 110.

[11] On November 21, 2012, Gilyan, two Commissioners, and Katona signed a renewal agreement that reads in relevant part as follows:

NOW, THEREFORE, in consideration of the promises contained herein, and other good and valuable consideration, the parties agree as follows:

1. **Nature and Scope of Services: Terms of agreement shall be modified as follows:**

DSG shall review all tax deductions claimed against the assessed value of real property in Lake County, Indiana for the past three (3) years.[7]

Article 5. **Terms of Agreement, shall be modified as follows:** This contract shall be for a term commencing on the effective date herein and expiring on the 31st day of December 2013.

No other modifications except as those set out herein shall be effective and all other terms of the agreement shall remain in force and effect as originally written.

Appellant's App. Vol. 6 at 40 (underlining omitted).

[12]    Petalas became Lake County Auditor in January 2015. In March 2015, Gilyan sent Petalas an email stating, "I am currently following the 2009 'look back,' but vehemently disagree." Appellant's App. Vol. 6 at 61. Petalas replied,

I am inclined to go along with the DLGF ruling that allows us to go back to the year 2009.… I would need to get some type of memorandum from them similar to what they sent with the 2009

---

[7] This is the only renewal agreement that contains this provision. The County does not specifically argue that it was incorporated into future agreements as a matter of law.

opinion that states they do not have a problem with us going back 10 years.

*Id.* at 59. Gilyan responded, "I will not cause you a problem with [DLGF] in regard to the 10 year look back. I assure you that I will make no move in that regard without fully reviewing it with you beforehand." *Id.*

[13] In December 2015, Dull sent Petalas and Gilyan an email stating, "I previously wrote a legal opinion regarding the statute of limitation on homestead tax deduction recovery. My opinion was overruled by the Attorney General. As I recall the Attorney General said you can go back 2 years, however, through some negotiation, that may have been extended to 3 years although that position is simply gratis via the DLGF." *Id.* at 65. Dull cautioned, "Through the rumor mill, the Commissioners are hearing that the Auditor will go back 10 years. You better get a definitive ruling from the Attorney General before you do that." *Id.*

[14] Petalas had authorized DSG to pursue collection of certain improper mortgage deductions, but in March 2015 he ordered an immediate freeze on those collections. In September 2016, Wieser sent an email to Dull stating that under Indiana law, only the Auditor can determine whether a mortgage deduction is improper, and the Commissioners could not contract away that statutory authority without the Auditor's consent. A draft renewal agreement for 2017 was signed by Gilyan and two Commissioners and was set for ratification on the Commissioners' January 2017 agenda, but Petalas and Wyllie allegedly caused it to be tabled.

[15]   In November 2017, DSG filed a complaint against the County and Petalas in both his individual and official capacities, alleging that the County breached its contract with DSG by limiting DSG's review of property tax records and collection of improper deductions to three years instead of ten years, thus causing "significant pecuniary losses" to DSG. Appellant's App. Vol. 2 at 26. DSG made a similar allegation against Petalas. DSG further alleged Petalas intentionally interfered with DSG's business and contractual relationships with the County.

[16]   Appellees filed a motion to dismiss DSG's complaint for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6), to be treated as a motion for summary judgment pursuant to Trial Rule 56.[8] DSG filed a response and designated evidence in opposition to Appellees' motion. After a hearing, the trial court denied Appellees' motion in part as to the County, finding a genuine issue of material fact regarding the lookback period for improper homestead deductions; the court also granted the motion in part as to the County, finding that it had no authority to contract with DSG to pursue collection of improper mortgage deductions. The court entered summary judgment for Petalas on all of DSG's claims.

---

[8] *See* Ind. Trial Rule 12(B) ("If, on a motion … to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

DSG filed a motion for partial summary judgment as to the lookback period for improper deductions. The County filed a response and designated evidence in opposition to the motion. After a hearing, the trial court denied DSG's motion, again finding a genuine issue of material fact regarding the lookback period.

The County filed a second motion for summary judgment, which it supplemented to raise the issue of subject matter jurisdiction. DSG filed a response and designated evidence in opposition. In January 2020, after a hearing, the trial court issued a final appealable order granting the County's summary judgment motion on the basis that the court lacked subject matter jurisdiction to decide the case because it "clearly 'arises under' the tax laws of Indiana." Appealed Order at 8. DSG now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### Section 1 – DSG has failed to establish that the trial court erred in granting summary judgment for Petalas.

We first address DSG's argument that the trial court erred in granting summary judgment for Petalas on its claims for breach of contract and intentional interference with its business and contractual relationships. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Meridian Title Corp. v. Gainer Grp., LLC*, 946 N.E.2d 634, 636 (Ind. Ct. App. 2011), *trans. denied*. Our standard of review of a summary judgment ruling is identical to the

trial court's: whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Id.* at 636-37. "Appellate review of a summary judgment motion is limited to those materials designated to the trial court. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant." *Id.* at 637 (citation omitted). "To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim." *Didion v. Auto-Owners Ins. Co.*, 999 N.E.2d 108, 111 (Ind. Ct. App. 2013). "Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist." *Id.* The trial court is not required to enter findings and conclusions, and we may affirm a grant of summary judgment on any theory supported by the designated materials. *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 211-12 (Ind. Ct. App. 2007). "The party appealing the summary judgment bears the burden of persuading us that the trial court erred." *Didion*, 999 N.E.2d at 111-12.[9]

[20] Regarding DSG's breach-of-contract claim, we agree with Petalas that summary judgment was proper because he was not a party, in any capacity, to

---

[9] We reject DSG's attempt to incorporate "by reference its arguments made in [its] amended response to the motion for summary judgment and motion to reconsider[.]" Appellant's Br. at 22. Indiana Appellate Rule 46(A)(8) provides that the argument section of an appellant's brief "shall contain the appellant's contentions why the trial court … committed reversible error"; DSG "may not evade this requirement by referring us to arguments found in a brief filed at some earlier point." *Dave's Excavating, Inc. v. City of New Castle*, 959 N.E.2d 369, 376 (Ind. Ct. App. 2012), *trans. denied*."

any contract with DSG. In fact, DSG admitted as much in paragraph 42 of its complaint. *See* Appellant's App. Vol. 2 at 31 ("On August 10, 2016, John Dull advised [DSG] that henceforth all questions on the Contract must go to Defendant Petalas and his attorney Randy Wyllie in spite of the fact that Defendant Petalas was not a party to the Contract."). The contract specifically states that it is between DSG and the Commissioners; the Auditor is named as the County's primary contact with DSG but is not named as a party anywhere in the document. Petalas may have signed the renewal agreement for 2016, and his predecessor Katona may have signed the original contract and prior renewal agreements, but DSG cites no authority for the proposition that one who merely signs a contract is a party to the contract as a matter of law.

[21] As for the intentional interference claims, DSG has failed to make a cogent argument that the trial court erred in granting summary judgment for Petalas. Indiana Appellate Rule 46(A)(8)(a) provides that the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]" DSG fails to mention, or cite any cases regarding, the essential elements of an intentional interference claim, which is a fatal error in attempting to overturn a summary judgment on such claims.[10] Aside from a

---

[10] Moreover, DSG has failed to include pinpoint citations for many of the cases that it does cite in its brief, in contravention of Indiana Appellate Rule 22 and the current edition of the Bluebook, to which that rule refers.

bald assertion of error, DSG makes only two contentions: (1) that the trial court gave no explanation for its ruling, which it was not required to give; and (2) that "DSG had appropriate contracts with the proper county executive to collect the taxes that were due from improper deductions[,]" Appellant's Br. at 21, which, even if true, begs the question of whether a genuine issue of material fact exists regarding Petalas's alleged interference with those contracts. "Mere conclusory arguments do not discharge the appellant's burden of establishing reversible error." *Pope v. Wabash Valley Human Servs., Inc.*, 500 N.E.2d 209, 213 (Ind. Ct. App. 1986). Accordingly, we affirm the trial court's entry of summary judgment for Petalas.[11]

## Section 2 – DSG's claims against the County should be dismissed for lack of subject matter jurisdiction.

[22] We now address DSG's contention that the trial court erred in granting summary judgment for the County on the basis that it lacked subject matter jurisdiction to decide the case. We agree with DSG that the trial court erred in granting summary judgment, but only because we agree with the trial court's determination that it lacked subject matter jurisdiction, and "summary judgment may not be rendered by a court which itself lacks subject matter

---

On review, we will not search through the authorities cited by a party to try to find legal support for its position. *Reed Sign Serv., Inc. v. Reid*, 755 N.E.2d 690, 695 n.4 (Ind. Ct. App. 2001), *on reh'g*, 760 N.E.2d 1102, *trans. denied* (2002).

[11] Given our resolution of this issue, we need not address DSG's argument that the trial court erred in not allowing it to conduct discovery before responding to Appellees' summary judgment motion, other than to note that DSG has failed to allege or establish any resulting prejudice.

jurisdiction." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994).

[23] "Subject matter jurisdiction is the power of the court to hear and decide a particular class of cases." *Wayne Twp. v. Ind. Dep't of Local Gov't Fin.*, 865 N.E.2d 625, 627 (Ind. Ct. App. 2007), *on reh'g*, 869 N.E.2d 531, *trans. denied*. "A trial court must possess subject matter jurisdiction in order to enter a valid judgment in a case. The absence of subject matter jurisdiction cannot be waived, and it renders a judgment void." *Id.* (citation omitted). Parties cannot confer subject matter jurisdiction on a court by consent or agreement; such jurisdiction can be conferred only by the Indiana Constitution or a statute. *Id.* "Where, as here, the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law and we review the trial court's ruling de novo." *Robinson v. Ind. Dep't of Local Gov't Fin.*, 99 N.E.3d 684, 688 (Ind. Ct. App. 2018), *trans. denied*.

[24] DSG observes that all standard superior courts, such as the trial court in this case, have "original and concurrent jurisdiction in all civil cases" pursuant to Indiana Code Section 33-29-1-1.5(1), and that its breach-of-contract case against the County is a civil case. But DSG's case is premised on its contention that the lookback period for improper homestead deductions is ten years as provided in the original contract, as opposed to the three-year period espoused by the DLGF and ultimately adopted by the County. The County argues, and we agree, that the Indiana Tax Court has exclusive jurisdiction over the subject matter of this dispute.

"In an effort to channel tax disputes to a specialized tribunal, the Indiana Legislature created the Tax Court in 1986." *Wayne Twp.*, 865 N.E.2d at 628 (quoting *State v. Sproles*, 672 N.E.2d 1353, 1356 (Ind. 1996)). "The recognized policy underlying creation of the Tax Court was to consolidate tax-related litigation in one court of expertise." *Id.* "The Legislature intended that all challenges to the tax laws—regardless of the legal theory relied on—be tried in the Tax Court." *Id.* (quoting *Sproles*, 672 N.E.2d at 1357).

Indiana Code Section 33-26-3-1 provides that the Tax Court "is a court of limited jurisdiction" that "has exclusive jurisdiction over any case that arises under the tax laws of Indiana and that is an initial appeal of a final determination made by: (1) the department of state revenue with respect to a listed tax (as defined in IC 6-8.1-1-1); or (2) the Indiana board of tax review." Pursuant to Indiana Code Section 33-26-3-2, the Tax Court also has "any other jurisdiction conferred by statute[.]" "For purposes of exclusive Tax Court jurisdiction, a case 'arises under' the tax laws if: 1) an Indiana tax statute creates the right of action; or 2) the case principally involves collection of a tax or defenses to that collection." *Wayne Twp.*, 865 N.E.2d at 628. "A 'final determination' for purposes of Tax Court jurisdiction is an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process." *Id.*

"This 'final determination' requirement essentially amounts to the principle, basic to all administrative law, that a party seeking judicial relief from agency action generally must first establish that all administrative remedies have been

exhausted." *Id.* "[A] party cannot circumvent the 'final determination' requirement basis for the Tax Court's exclusive jurisdiction over tax appeals by filing an action in a trial court." *Id.* "Failure to exhaust administrative remedies is a defect in subject matter jurisdiction." *Id.* (quoting *State ex rel. Att'y Gen. v. Lake Sup. Ct.*, 820 N.E.2d 1240, 1247 (Ind. 2005), *cert. denied*).

> Thus, the lack of a "final determination" by a tax-related agency, which is equivalent to a failure to exhaust administrative remedies, only acts to deprive the Tax Court of subject matter jurisdiction to consider the case; it does *not* mean that a trial court, therefore, has subject matter jurisdiction to consider the merits of the case. Such a result would frustrate both the exhaustion of remedies requirement and the clear legislative intent that the Tax Court should consider all tax-related judicial appeals.

*Id.* at 628-29 (footnote omitted).

[28] DSG first contends that dismissal for lack of subject matter jurisdiction is inappropriate because this case does not arise under the tax laws for purposes of Indiana Code Section 33-26-3-1. "Our supreme court has interpreted the 'arises under' language broadly to include 'any case challenging the collection of a tax or assessment … whether the challenge is premised on constitutional, statutory, or other grounds.'" *Robinson*, 99 N.E.3d at 689 (quoting *State ex rel. Zoeller v. Aisin USA Mfg., Inc.*, 946 N.E.2d 1148, 1153 (Ind. 2011)). Here, DSG's breach-of-contract case rests on its theory that the County wrongly limited DSG's collection of improper property tax deductions to three years (per Indiana Code Section 6-1.1-9-4) instead of ten years (per Indiana Code Section 6-1.1-22-10

and the parties' contract).[12]  Thus, we readily conclude that this case arises under Indiana's tax laws.  *See D.A.Y. Invs. LLC v. Lake Cty.*, 106 N.E.3d 500, 505-06 (Ind. Ct. App. 2018) (affirming dismissal of breach-of-contract case for lack of subject matter jurisdiction, where alleged breach was county defendants' incorrect and excessive assessment or collection of property taxes), *trans. denied*.[13]

[29]  DSG also contends that dismissal is inappropriate because the DLGF is not one of the entities mentioned in Indiana Code Section 33-26-3-1.  In *Wayne Township*, this Court noted that the DLGF's absence from Indiana Code Section 33-26-3-1 is not dispositive, because when the legislature created the DLGF in 2002, it enacted a public law stating that the Tax Court has "exclusive jurisdiction over any case that arises under" Indiana's tax laws and that is an initial appeal of a final determination made by the DLGF if (1) the Tax Court would have had jurisdiction over the case if the appeal had been initiated before January 1, 2002; and (2) the enactment did not provide that the final determination was subject to appeal to the Board of Tax Review.  865 N.E.2d at 629 (quoting Ind. Pub. Law 198-2001 § 116).

---

[12] We note that DSG specifically agreed to a three-year limitation period in the November 2012 renewal agreement.  We also note, as does the County, that a statutory limitation period may not be extended by contract.  *See Olcott Int'l & Co. v. Micro Data Base Systs., Inc.*, 793 N.E.2d 1063, 1074 (Ind. Ct. App. 2003) ("It is a well settled rule of contract law that the parties to an agreement cannot enforce terms which contravene statutory law.") (quoting *Meehan v. Meehan*, 425 N.E.2d 157, 160 (Ind. 1981)), *trans. denied*.

[13] DSG's reliance on *Hutcherson v. Ward*, 2 N.E.3d 138 (Ind. Tax Ct. 2013), is misplaced because the statutory limitation issue in that case arose under Indiana's tax laws in an appeal from the Board of Tax Review and therefore was decided by the Tax Court.

[30] The *Wayne Township* court further observed that, "following the creation of the DLGF, the Tax Court enacted rules referring to it," *id.*, including Tax Court Rule 2(B), which at that time provided, "An original tax appeal is an action that arises under the tax laws of the State of Indiana by which an initial judicial appeal of a final determination of the Department of State Revenue, the Indiana Board of Tax Review, or the Department of Local Government Finance is sought." *Id.* The court noted that the Tax Court did not amend the rule after a 2004 recodification of Indiana Code Title 33 and stated, "Clearly, the Tax Court has believed and still believes that it has exclusive jurisdiction to consider appeals from final determinations of the DLGF, at least where an initial appeal to the Board of Tax Review is not available by statute." *Id.* at 630. Tax Court Rule 2 remains substantially similar today,[14] and DSG cites nothing to suggest that the Tax Court's belief regarding the extent of its jurisdiction is unreasonable.

[31] DSG further asserts that the DLGF has not made a final determination in this case, but that too is not dispositive. "For purposes of Tax Court jurisdiction, a final determination is an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process." *Robinson*, 99 N.E.3d at 690. As the *Wayne Township* court clarified in its

---

[14] *See* Ind. Tax Court Rule 2 ("In the Indiana Tax Court, the forms of civil action include: (A) an original tax appeal arising under the tax laws of the State of Indiana by which an initial judicial appeal of a final determination of the Department of State Revenue, the Indiana Board of Tax Review, or the Department of Local Government Finance is sought, and (B) any other action for which jurisdiction in the Tax Court is conferred by statute.").

opinion on rehearing, "general jurisdiction courts have no jurisdiction over determinations of the DLGF, either final or non-final determinations." 869 N.E.2d at 533. "Thus, whether or not there is a 'final determination' here by the DLGF, this case does not belong in a court of general jurisdiction. It might not belong in the Tax Court, either, if there is not a 'final determination.'" *Id*.

[32] At an August 2019 status conference in this case, a deputy attorney general representing the DLGF stated that the DLGF's opinion is not a final determination and could be appealed to the Board of Tax Review. *See* Tr. Vol. 2 at 157 ("It's an informative e-mail that's informative but it's certainly not binding on any party. Either DSG or the County could have taken this to the Indiana Board of Tax Review or to the Indiana tax court."). Neither DSG nor the County has shed further light on this statement, and we need not unpack it here except to say that regardless of whether the DLGF's opinion is a final determination or whether it must be appealed to the Board of Tax Review, this case does not belong in a court of general jurisdiction.[15] Given the jurisdictional complexities presented in this case, as well as in *Wayne Township*

---

[15] In *Wayne Township*, this Court noted,

> A court of general jurisdiction would have jurisdiction, to the exclusion of the Tax Court, to the extent of entering a mandamus order directing a tax-related agency to act where it has failed to do so, that is, where the failure to act has prevented the entry of a "final determination" by the agency. *See State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.*, 702 N.E.2d 701, 706 (Ind. 1998). That jurisdiction, however, would not extend to directing "any portended result of that action." *Id*. at 704. That is, if there is not a final determination neither the Tax Court nor a court of general jurisdiction could consider the merits of a case; the general jurisdiction court, however, could compel the agency to act and enter a final determination, the merits of which would then be reviewed by the Tax Court.

865 N.E.2d at 629 n.1.

and *Robinson*, and in the interest of judicial economy, our legislature and supreme court may wish to consider authorizing trial courts to certify questions arising under Indiana's tax laws to the Tax Court in certain circumstances, similar to the procedure by which federal courts may certify questions of state law to our supreme court pursuant to Indiana Appellate Rule 64. Because the trial court here lacked subject matter jurisdiction, it could not render summary judgment for the County; accordingly, we reverse and remand with instructions to dismiss DSG's claims against the County for lack of subject matter jurisdiction.[16]

## Section 3 – The trial court did not err in denying DSG's motion for partial summary judgment.

DSG also argues that the trial court erred in denying its motion for partial summary judgment as to the lookback period for improper deductions. Because we hold that this issue is exclusively within the Tax Court's subject matter jurisdiction, we affirm that ruling.

Affirmed in part, reversed in part, and remanded.

---

[16] We need not address DSG's arguments regarding venue and Trial Rules 21 and 75, which are irrelevant to the jurisdictional issues in this case. *See Hootman v. Fin. Ctr. Fed. Credit Union*, 462 N.E.2d 1064, 1066 n.7 (Ind. Ct. App. 1984) (distinguishing jurisdiction, "which involves the court's ability to hear a particular group of cases," from venue, "which connotes the proper situs for the trial of the action"). Also, we do not address DSG's claim against the County regarding the collection of improper mortgage deductions because DSG has failed to provide cogent argument on the issue. *See Weaver v. Niederkorn*, 9 N.E.3d 220, 223 (Ind. Ct. App. 2014) (failure to present cogent argument results in waiver of issue).

Robb, J., and Brown, J., concur.